712 So.2d 535 (1998)
Carl MELANCON and Peggy Melancon
v.
Charles GIGLIO, S.P. Larussa, and Westgate Development, Inc.
No. 96 CA 2507.
Court of Appeal of Louisiana, First Circuit.
March 13, 1998.
Rehearing Denied June 24, 1998.
*537 Robert B. Butler, III, Houma, for Plaintiffs-Appellants Carl and Peggy Malancon.
Julius P. Hebert, Jr., Hebert & Marceaux, Houma, for Defendant-Appellee Westgate Development, Inc.
Before GONZALES and PARRO, JJ., and TYSON,[1] J. Pro Tem.
PARRO, Judge.
This case involves a dispute over the construction of a private driveway by the plaintiffs across property which is subject to a servitude of public passage. The plaintiffs have appealed the trial court judgment dismissing their petition for declaratory judgment and injunctive relief. For the following reasons, this court reverses and renders.

Facts and Procedural History
Carl and Peggy Melancon purchased lot 20 in Hollywood Industrial Subdivision in Houma, Louisiana, from Terrebonne Bank and Trust Company on April 1, 1985. The property description in the act of sale recited that lot 20, which fronts on Louisiana Highway 311, was bounded "westerly by 60 foot strip reserved for future street." Hollywood Industrial Subdivision is located in an area zoned for light industrial use.
In 1992, Westgate Development, Inc. ("Westgate") purchased and developed the property behind the strip of industrial properties along Highway 311. In conjunction with the acquisition, it also purchased the 60-foot wide strip of land adjacent to the Melancons' property that had been reserved by the developers of Hollywood Industrial Subdivision for a future street. On the plat of Westgate Subdivision prepared by Milford & Associates, Inc. dated April 3, 1992, and recorded in the public records of Terrebonne Parish, Westgate designated the entire 60-foot wide strip of land as Westgate Boulevard. Westgate Boulevard was to serve as the entrance to Westgate Subdivision and was bordered on both sides by previously existing commercial or industrial properties. Although Westgate showed the entire 60-foot width on its plat as Westgate Boulevard, the paved portion was only approximately 27 feet wide.[2] The unpaved portion of this designated street had decorative light poles and extensive landscaping for aesthetic enhancement of the Westgate Subdivision entrance.
With respect to the dedication of streets, the subdivision plat, which was finally approved by the Houma-Terrebonne Regional Planning Commission on August 20, 1992, contained the signature of the developer after the following language:
The streets as designated on this subdivision plat are hereby formally dedicated for use as a servitude for underground utilities and public passage only, the fee in the land being reserved. The parish of Terrebonne shall have the right to improve and maintain the said streets for the convenience of the public.
The servitudes as indicated on the private lots and the street rights of way as shown are hereby dedicated for the use of constructing, operating and maintaining utilities and[/]or drainage structures, the fee in the land being reserved by the property owner.
By ordinance number 5002, the Terrebonne Parish Council, on behalf of the Terrebonne Parish Consolidated Government, accepted the maintenance and operation of the streets, servitudes, utilities, sewerage, and rights-of-way for phase one of Westgate Subdivision, as depicted on the subdivision plat, which included Westgate Boulevard.
In 1994, the Melancons subdivided lot 20 into three separate lots (lots 20-A, 20-B, and 20-C). Mrs. Melancon has an insurance office on lot 20-B which is located at the intersection of Highway 311 and Westgate Boulevard. Lot 20-A was located east of lot 20-B along Highway 311 and will purportedly be the site of a medical supply office. The *538 Melancons propose to build a residence on lot 20-C, which is located behind lots 20-A and 20-B and is bounded on the west by Westgate Boulevard.
In conjunction with their subdivision of lot 20, the Melancons desired to construct driveways from lots 20-B and 20-C to Westgate Boulevard. In preparing to construct the driveways, the Melancons proceeded to remove some of the shrubbery and trees that had been placed by Westgate on the unpaved portion of the dedicated 60-foot strip of land. Westgate and several of the subdivision residents complained of the Melancons' removal of shrubbery and trees from the boulevard entrance.
In 1995, the Melancons obtained two building permits from the Terrebonne Parish Consolidated Government. One authorized the Melancons to construct a 25-foot wide driveway from the concrete parking lot on lot 20-B to Westgate Boulevard. The other authorized the Melancons to construct a new residence on lot 20-C with a driveway connecting to Westgate Boulevard. The proposed driveways to Westgate Boulevard would cross unpaved portions of the dedicated 60-foot strip of land. In notifying the Melancons of the approval of their permit applications, Patrick Gordon, Director of the Department of Planning and Economic Development for Terrebonne Parish, stated:
This is to further advise that the Terrebonne Parish Planning Department is cognizant of the dispute with Westgate Development, Inc. and takes no position in this matter. Consequently, this permit is not to be construed as a transfer of property rights.
The Melancons filed a petition for declaratory judgment and injunctive relief against Westgate.[3] They sought a judgment declaring that (1) Westgate Boulevard was a public road that was dedicated to the public and accepted by the governing body, (2) Westgate has no right to control the use of the surface of the road, (3) Westgate has no right to interfere with the ingress and egress from their lots (20-B and 20-C) onto the public road, or with the construction of driveways from their property to the paved portion of the surface of the public road, and (4) they have a right to remove any shrubs or other obstructions placed or planted on the public road by Westgate in order to connect their driveways to the paved portion of Westgate Boulevard. They also sought an injunction to prohibit Westgate from interfering in any way with their use of the public road or with their construction of a driveway from lot 20-B or lot 20-C, or both, to the paved surface of the public road.
After trial of the matter, the trial court entered judgment in favor of Westgate and dismissed the Melancons' petition for declaratory judgment and injunctive relief. The Melancons were cast for all costs. From this judgment, the Melancons appeal.
On appeal, they contend the trial court erred in failing to recognize that since Westgate Boulevard was a 60-foot wide public street, created by statutory dedication, (1) they, as abutting property owners, are entitled to ingress and egress from their property onto Westgate Boulevard, (2) Westgate has no right to interfere with or obstruct passage by the Melancons across the unpaved portion of the street to the paved portion of the street, and (3) the surface of Westgate Boulevard is under the control of the Terrebonne Parish governing body, and such control includes the granting of building permits to construct driveways in order to have access, ingress and egress, from their abutting property onto the street. The Melancons argue the trial court erred in failing to render a judgment declaring that Westgate Boulevard was a public street dedicated to the public and accepted by the governing body and that Westgate had no right to control the use of the surface of the street. The Melancons further contend the trial court erred in failing to enjoin Westgate from interfering in any way with their ingress or egress from lots 20-B and 20-C onto the public street, Westgate Boulevard, and from interfering in any way with their construction of driveways (approved by the
*539 Terrebonne Parish governing body) from their property to the paved portion of the public street.[4]

Classification of Dedication
The dedication of a street may be accomplished in four ways: statutory dedication, formal dedication, implied dedication, and tacit dedication. St. Charles Parish School Board v. P & L Investment Corporation, 95-2571 (La. 5/21/96), 674 So.2d 218, 221. One of these modes of dedication is by compliance with LSA-R.S. 33:5051, which imposes on subdividers of land certain duties, including the filing of plats and the recordation of a formal dedication of all the streets to public use. Union Bank v. Baudin, 598 So.2d 689, 693 (La.App. 3rd Cir.1992). This is known as statutory dedication. The jurisprudence is well settled that a statutory dedication vests ownership of the land under the streets in the public. A subdivider, however, may define the interest he intends to convey to the public or reserve the ownership of streets and other public places. In such a case, the public acquires merely a servitude of public use. A.N. Yiannopoulos, Property, § 99, at 215 in 2 Louisiana Civil Law Treatise (3rd ed. 1991).
A second mode of dedication is by virtue of a written act, whether in notarial form or under private signature. Yiannopoulos, Property, § 95 at 204. The act must clearly show an intent to dedicate. Anderson v. Police Jury of the Parish of East Feliciana, 452 So.2d 730, 734 (La.App. 1st Cir.), writ denied, 457 So.2d 13 (La.1984). This mode of dedication is known as formal dedication. Yiannopoulos, Property, § 95 at 204-205. Absent a clear expression to the contrary, a formal dedication conveys ownership of the land under the streets and may apply to those situations where there has not been substantial compliance with LSA-R.S. 33:5051. See Anderson, 452 So.2d at 734.
A third mode of dedication may be accomplished without any express or written act. This is known as implied dedication because it is inferred from the owner's actions. A dedication by implication consists of the assent of the owner, use by the public, and maintenance by the municipality. St. Charles Parish School Board, 674 So.2d at 222. Examples of implied dedication are the sale of lots with reference to a plan showing streets, squares, and other public places or by an informal offer to the public to use a road and acceptance by the public by actual use. See Yiannopoulos, Property, § 95 at 205 and § 98 at 211-212. This creates only a servitude, and acceptance by the public is necessary. Anderson, 452 So.2d at 734.
Finally, a fourth mode of dedication arises by virtue of LSA-R.S. 48:491, that is, the maintenance of roads and streets by authority of a parish or municipal governing authority for three years. This is known as tacit dedication. Yiannopoulos, Property, § 95 at 205 and § 98 at 212. This form of dedication creates servitudes of passage and utility. See Yiannopoulos, Property, § 100 at 220.
The dedicatory language on the plat signed by Westgate's authorized agent shows Westgate made a formal dedication to public use as a servitude with regard to the streets designated on the subdivision plat. In its dedication, Westgate indicated an intent to retain the ownership of the property which had been designated for use as streets, while granting to the public a servitude on the property for underground utilities and public passage. The parish was granted the right to improve and maintain said streets for the convenience of the public. Such dedication was accepted by the Terrebonne Parish governing authority. After considering the facts, the trial court found a formal dedication of Westgate Boulevard to the public as a servitude for public passage, with Westgate retaining the naked ownership of the land. Neither party takes issue with this finding, which is supported by the record and is not clearly wrong. In light of the trial court's finding, together with the recording of a plat which contained the formal dedication to public use, we conclude a statutory dedication *540 was effected by Westgate. However, pursuant to the language of the dedication, the parish acquired only a servitude for underground utilities and public passage.

Extent and Use of Servitude of Public Passage
The public is entitled to full unhindered and unobstructed use of a servitude of public passage. Wright v. Department of Highways, 342 So.2d 230, 232 (La.App. 1st Cir.1976), writ denied, 343 So.2d 1075 (La. 1977). Nonetheless, the extent and use of a servitude are regulated by the act which created it. See LSA-C.C. art. 697. If the proposed use is more extensive than, or different from the nature of, the existing servitude, the person seeking to use the property encumbered by the servitude must obtain the consent of the servitude owner as well as the landowner and possibly obtain an additional servitude to allow the intended use. See Louisiana Power & Light Company v. Dileo, 79 So.2d 150, 155 (La.App. 1st Cir.1955).
The dedicatory language in this case stated the areas designated as streets on the plat were for use as a servitude for underground utilities and public passage. Since this case does not involve utilities, we are required to determine if the placement by the Melancons of an extension of their driveways on the land owned by Westgate, but subject to a servitude of public passage, is incompatible with the nature and extent of the servitude granted by Westgate.
The dedicatory language on the plat established a servitude of public passage over the entire 60-foot wide strip of land, not just the area that was subsequently paved for vehicular travel. Although the unpaved portion of the dedicated land adjacent to the paved street is used for utilities, such land is also obviously used by the owners of the subdivision lots to access the paved streets in the interior of the subdivision. This observation was confirmed by Patrick Gordon, who testified that within the subdivision, access to the paved streets is made by driveways crossing the unpaved portion of the servitude. Indeed, the evidence shows the servitude of public passage granted with respect to all streets in this subdivision exceeded the width of the portions ultimately paved. The need for such additional land was explained by Mr. Gordon, who testified that street dedications are generally wider than the contemplated paved portion to allow for future expansion of the street.
In its statutory dedication, Westgate did not express an intention that the dedication of the strip of land designated as Westgate Boulevard be different from the dedication made with respect to other streets shown on the plat. Nor did Westgate reserve from its dedication any portion of the 60-foot strip immediately adjacent to the Melancons' property.
The 60-foot strip designated as Westgate Boulevard was dedicated to public use. Because there was no language to the contrary, this court concludes Westgate's dedication granted the rights necessary for customary passage by the public with respect to the entire 60-foot strip of land. The placement of a driveway extension on property that is subject to a servitude of public passage is consistent with the nature and extent of the existing servitude and would not impose an entirely different burden on the land than that granted by the developer. Therefore, the servitude which granted the right to customary passage by the public in this case extends to the use proposed by the Melancons. Accordingly, the holding of the trial court to the contrary constituted legal error.
Thus, although the parish governing authority did not own the land, it could, by acting within its rights granted in the statutory dedication, permit the Melancons to construct extensions to their driveways on property over which it was granted a servitude of public passage, without the Melancons having to obtain permission or a separate servitude from Westgate.[5]Cf. Mioton v. Mannina, 536 So.2d 793, 795-796 (La.App. 5th Cir. 1988) (which involved a situation where the public had not obtained a right of public use of the land adjacent to the roadbed). The Melancons properly sought the consent of the parish to extend their driveways onto the land subject to the servitude of public passage.[6] *541 Once the proposed use was properly permitted by the governing body, the Melancons had a right to participate in the public use of this servitude of passage in accordance with the terms of the permits.

Decree
For the foregoing reasons, the judgment of the trial court is reversed, and there is judgment in favor of the Melancons declaring that (1) by its statutory dedication, the developer of Westgate Subdivision granted to the public a servitude of public passage over the entire 60-foot strip of land designated as Westgate Boulevard, (2) the placement of driveway extensions on this property by the Melancons is consistent with the nature and extent of the existing servitude, and (3) the Melancons have a right to participate in the public use of this servitude of passage in accordance with the terms of the permits granted to them by the parish governing body. The right to injunctive relief, if necessary, is reserved to the Melancons. Court costs of all proceedings are assessed to Westgate Development, Inc.
REVERSED AND RENDERED.
NOTES
[1] Judge Ralph E. Tyson of the Nineteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Each of the streets within the subdivision (Springfield, Westport, Angelle, and Wingfield) was designated on the plat as being 50 feet in width. Nonetheless, other documents reveal that the actual paved portions of these streets were also only 27 feet wide.
[3] Charles Giglio and S.P. LaRussa, who were shareholders in Westgate, were also named as defendants, but both were dismissed prior to trial pursuant to an exception raising the objection of no cause of action.
[4] This case does not present the issue of an enclosed estate. See LSA-C.C. arts. 689-696. Thus, the Melancons' right to construct a driveway depends on the nature and extent of the public's use with respect to the rights granted by Westgate.
[5] Seemingly, such driveway extensions would be subject to public use.
[6] According to Mr. Gordon, the governing authority reviews permit applications to ensure that things being placed on a public servitude do not interfere with the public utility servitude.