730 So.2d 1062 (1999)
Michael A. BARRILLEAUX and Maria D. Barrilleaux
v.
NPC, INC.
No. 98 CA 0728.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
Writ Denied May 28, 1999.
*1063 David M. Ellison, Jr., Baton Rouge, Counsel for Plaintiffs/Appellants, Michael A. Barrilleaux and Maria D. Barrilleaux.
Douglas K. Williams, Baton Rouge, Counsel for Defendant/Appellee, NPC, Inc.
Before: LeBLANC, FOGG and PARRO, JJ.
LeBLANC, J.
Michael A. and Maria D. Barrilleaux, plaintiffs, appeal from a trial court judgment in favor of NPC, Inc., defendant, denying plaintiffs' request for a preliminary injunction and dismissing plaintiffs' petition.
Plaintiffs are the owners of a certain tract of land located in Iberville Parish. The property abuts the Mississippi River; located on the property and running parallel to the river is a levee and La. Highway 141. The plaintiffs purchased the property by cash sale on December 19, 1991. The property is subject to a right of way for the construction, improvement and maintenance of La. Highway 141.
In early June 1997, NPC entered onto the Barrilleaux property and began the installation of pipe lines within the highway right of way. NPC holds a permit from the Louisiana Department of Transportation and Development and asserts the highway right of way enables the department to grant the permit for construction of the pipe lines. Plaintiffs sought a temporary restraining order and an injunction prohibiting NPC from installing the pipe lines. Plaintiffs were granted a temporary restraining order, ordering NPC to cease all construction across the Barrilleaux property. However, after a hearing, the trial court dissolved the temporary restraining order and denied plaintiffs' request for an injunction stating the plaintiffs had not shown irreparable damage.
The Barrilleauxs appealed and this court, finding no need for the owner of immovable property to show irreparable injury, reversed the trial court and remanded the matter for a continuation of the hearing on the preliminary injunction. Barrilleaux v. NPC, Inc., 97-2040, p. 4 (La.App. 1 Cir 12/29/97); 704 So.2d 449, 451.
Plaintiffs again sought a temporary restraining order and prayed for an injunction. On remand, the trial court, without additional argument, held NPC "was not required to expropriate or obtain the consent of the Plaintiffs in order to lay the pipeline within the right-of-way of La. Highway 141," denied plaintiffs' request for a preliminary injunction and dismissed plaintiffs' petition. Plaintiffs again appeal. At oral argument in this matter, counsel for both parties admitted the questionable mootness of the issue presented, as NPC has entered onto plaintiffs' property and installed a pipe line within the highway right of way. However, while we admit that no ruling by this court will have a *1064 practical effect on the trial courts' ruling denying plaintiffs' request for an injunction, we cannot maintain the status quo, our ruling will afford plaintiffs practical relief and will recognize the aggrieved parties' rights.
The single question raised by this appeal is whether La. R.S. 45:254 authorizes NPC to construct and operate a pipe line within a highway right of way without expropriation proceedings or compensation to the landowner.
La. R.S. 45:254 provides:
Expropriation; telegraph and telephone lines; utilizing streams, highways, etc.
All persons included in the definition of common carrier pipe lines as set forth in R.S. 45:251[1] have the right of expropriation with authority to expropriate private property under the state expropriation laws for use in its common carrier pipe line business, and have the right to lay, maintain and operate pipe lines, together with telegraph and telephone lines necessary and incident to the operation of these pipe lines, over private property thus expropriated, and have the further right to lay, maintain and operate pipe lines along, across, over and under any navigable stream or public highway, street, bridge or other public place, and also have the authority, under the right of expropriation herein conferred, to cross railroads, street railways, and other common carrier pipe lines by expropriating property necessary for the crossing under the expropriation laws of this state. The right to run along, across, over or under any public road, bridge or highway, as before provided for, may be exercised only upon condition that the traffic thereon is not interfered with, and that such road or highway is promptly restored to its former condition of usefulness, at the expense of the pipe line owner, the restoration to be subject also to the supervision and approval of the proper local authorities, and, provided, that in the exercise of the privilege herein conferred, owners or operators of these pipe lines shall compensate the parish, municipality or road district, respectively, for any damage done to such public road, in the laying of pipe lines, telegraph or telephone lines, along, under, over or across the same. Nothing in this Section shall be construed to grant any pipe line company the right to use any public street or alley of any incorporated city, town or village, except by express permission from the city or other governing authority. (Emphasis added.)
NPC asserts Section 254 confers three separate and distinct rights. NPC asserts the phrase "have the further right to lay, maintain and operate pipe lines along, across, over and under any navigable stream or public highway, street, bridge or other public place" of Section 254 is authority for a common carrier to lay and operate pipe lines without the requirement of expropriation. We disagree.
The starting point for interpretation of any statute must be the language of the statute itself. Hughes v. Carroll Timber Co., 96-0031, p. 6 (La.App. 1 Cir. 10/1/96); 694 So.2d 331, 335. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and its letter shall not be disregarded in search of the intent of the legislature. La. C.C. art. 9; Billiot v. B.P. Oil Co., 93-1118, p. 22 (La.9/29/94); 645 So.2d 604, 616. When interpreting a law, the court should give it the meaning the lawmaker intended. It will not be presumed that the legislature intended for any part or provision of the law to be meaningless or useless. Colwell v. State, Office of Attorney General of Louisiana, Department of Justice, 506 So.2d 941, 946 (La.App. 1 Cir.), writ denied, 508 So.2d 89 (1987). It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, *1065 that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Sanchez v. Sanchez, 582 So.2d 978, 980 (La.App. 1 Cir. 1991). The meaning of a statute is to be interpreted by looking to all the sections taken together so that no section, clause, sentence or word becomes superfluous or meaningless. Simon v. Lafayette Automotive, Wrecker and Towing Control Committee, 532 So.2d 283, 286 (La.App. 3 Cir.1988).
Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1 Cir.1984). The legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. Colwell v. State, Office of Attorney General of Louisiana, 506 So.2d at 944. The meaning and intent of the statutory provision is to be determined by a consideration of the statute in its entirety and all other laws on the same subject matter and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the legislature in enacting it. It is reasonable to conclude that the legislature, in passing a statute, did not intend to abrogate any prior law relating to the same subject matter. Hayden v. Richland Parish School Board, 554 So.2d 164, 167 (La.App. 2 Cir.1989), writ denied, 559 So.2d 124 (1990).
A reasonable reading of the statute at issue herein does not compel a conclusion that each phrase refers to a separate and distinct right. In our view, the three phrases are inextricably linked in the same sentence. Distinctions are made between private property, public places, and other common carrier pipe lines; however, the rights conferred by this statute to all persons defined as common carriers are, in each case, "under the expropriation laws of this state." With regard to private property, common carriers "have the right of expropriation" and "the right to lay, maintain and operate pipe lines" under the expropriation laws of this state. With regard to public places, identified as a navigable stream or public highway, street, bridge or other public place, common carriers have the right "to lay, maintain and operate pipe lines" under the expropriation laws of this state. Lastly, with regard to common carrier pipe lines, identified as railroads, street railways, and other common carrier pipe lines, common carriers may "cross ... by expropriating property necessary for the crossing" under the expropriation laws of this state. Albeit the concept could be more clearly expressed, it is inconceivable to think that when enacting Section 254, the legislature intended, within a section authorizing and requiring expropriation, to ordain a single circumstance wherein expropriation was not required. While La. R.S. 1:13 provides: "[h]eadings to sections, source notes and cross references are given for the purpose of convenient reference and do not constitute part of the law", a heading may suggest an interpretation when the statutory language is unclear. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1103 (La.1985). The heading "Expropriation" to Section 254 suggests an interpretation which requires expropriation in each listed instance designated in the statute.
In addition, the Louisiana Constitution, art. 1, § 4, commands that property shall not be taken or damaged by the state, its political subdivisions, or any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner. Thus, a landowner's constitutional right to acquire, use and dispose of private property prohibits the taking of private property without expropriation. See Constance v. State Through Dept. of Transportation and Development, Office of Highways, 626 So.2d 1151, 1156 (La.1993), cert. denied, 512 U.S. 1219, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994). A grant of authority for the taking of private property without expropriation would be incompatible with the protection afforded property owners in the constitution. Accordingly, we must presume that the legislature, in enacting Section 254, did not intend to abrogate the constitutional protection relating to the same subject matter. See Hayden v. Richland *1066 Parish School Board, 554 So.2d at 167. The construction suggested by NPC would create an inconsistency that should be avoided when a reasonable interpretation can be adopted. Bunch v. Town of St. Francisville, 446 So.2d at 1360.
We hold, therefore, that La. R.S. 45:254 does not authorize NPC to construct and operate a pipe line within a highway right of way without expropriation proceedings or compensation to the landowner. The judgment of the trial court dismissing plaintiffs' petition is hereby reversed, and we remand this case to allow for proceedings consistent with this opinion. NPC, Inc. to bear all costs of this appeal.
JUDGMENT OF DISMISSAL REVERSED, AND REMANDED.
PARRO, J., concurs with written reasons.
PARRO, J., concurring.
I concur with the majority opinion because I believe the result reached is appropriate under the facts and circumstances of this case. However, I would interpret LSA-R.S. 45:254 to authorize the laying, maintaining, and operating of pipe lines over and under a "public place" that is owned by the state without expropriation. In this case, the state merely had a servitude of passage, and the Barrilleauxs still owned the property. Therefore, I feel that the "first phrase" of LSA-R.S. 45:254 pertaining to private property governs and expropriation would be required in this case. On the other hand, if the state would have had ownership of the property, I believe it would have been a "public place," and expropriation would not have been necessary. Accordingly, I agree with NPC, Inc.'s position that the three phrases of the statute refer to separate and distinct rights. However, I disagree that the second phrase is applicable in this case since the state did not own the property in question.
This interpretation of LSA-R.S. 45:254 is consistent with prior jurisprudence of this court. See Melancon v. Giglio, 96-2507 (La. App. 1st Cir.3/13/98), 712 So.2d 535, 540; Louisiana Power & Light Company v. Dileo, 79 So.2d 150, 155 (La.App. 1st Cir.1955). NPC, Inc. properly sought the consent of the Department of Transportation and Development (DOTD) to place its pipe lines on, under, or across the land subject to the highway right of way. The public is entitled to full unhindered and unobstructed use of a servitude of public passage. Melancon v. Giglio, 712 So.2d at 540. Nonetheless, the extent and use of a servitude are regulated by the act which created it. See LSA-C.C. art. 697. If the proposed use is more extensive than, or different from the nature of, the existing servitude, the person seeking to use the property encumbered by the servitude must obtain the consent of the servitude owner as well as the landowner and possibly obtain an additional servitude to allow the intended use. Melancon v. Giglio, 712 So.2d at 540.
Since the Barrilleauxs' predecessors in title merely granted DOTD a servitude of passage, which does not extend to the use for private pipe line purposes, DOTD (as owner merely of the servitude of passage) has no authority to grant permission to another for its use for another purpose, and NPC, Inc. cannot set its pipe lines on, under, or across these lands without the consent also of the landowner, or without securing a servitude for that purpose by expropriation pursuant to LSA-R.S. 45:254. See Louisiana Power & Light Company v. Dileo, 79 So.2d at 155.
Accordingly, I respectfully concur.
NOTES
[1] La. R.S. 45:251(1) states the meaning of "common carrier":

includes all persons engaged in the transportation of petroleum as public utilities and common carriers for hire; or which on proper showing may be legally held a common carrier from the nature of the business conducted, or from the manner in which such business is carried on.
The Barrilleauxs do not dispute that NPC is a common carrier.