Dear Mayor Harris:
This office is in receipt of your request for an Attorney General Opinion regarding offtrack wagering and video draw poker device gaming. Your questions as I understand them are essentially:
 (1) Whether a municipality may permit the establishment of an offtrack wagering facility within its boundaries; and
 (2) Whether a municipality within a parish which previously voted not to permit video draw poker device gaming in the parish may reinstitute video draw poker device gaming in the municipality?
For the reasons which follow, it is the opinion of this office that an act of the legislature would be necessary to authorize a parish or municipality within a parish where offtrack wagering had not been conducted on or before October 15, 1996, to conduct an election on a proposition to allow the establishment of an offtrack wagering facility in that parish or municipality. It is further the opinion of this office that an act of the legislature would be necessary to authorize a parish or municipality within a parish which had previously voted not to permit video draw poker device gaming to conduct an election to reinstitute video draw poker device gaming in the parish or municipality.[1]
Act No. 203 of the 1987 Regular Session, effective June 30, 1987, authorized offtrack wagering at licensed offtrack wagering facilities in the State of Louisiana.
La.R.S. 4:214 provides in pertinent part:
 (2)(a)(i) Before a license is granted for an offtrack wagering facility in any parish, the voters of that parish must have approved the establishment of such a facility within the parish in a referendum election held for that purpose. The commission shall request a referendum by the governing body of a parish only after receipt of an application for licensure of an offtrack wagering facility in that parish by the eligible applicant as provided in R.S. 4:215.
* * *
 (b)(i) After a request by the commission to a parish governing authority for an offtrack referendum is voided for any reason, the original applicant may either:
 (aa) Resubmit the application for licensure, and the commission shall submit a new request for an offtrack referendum election to the parish governing authority; or
 (bb) Submit a new application to the commission for licensure of an offtrack wagering facility in any city, town, or municipality within the parish, and the commission shall request the governing authority of such city, town, or municipality to hold an offtrack referendum election.
* * *
 (iii) If the offtrack referendum gains voter approval, the commission may license one offtrack wagering facility within the corporation limits of the city, town, or municipality in which the referendum was held. Such license must conform to all applicable licensing criteria as provided in this Part.
La. Const. art. XII, § 6(C)(1), which became effective October 15, 1996, provides:
 (C) Gaming, Gambling, or Wagering Referendum Elections.
(1)(a) No law authorizing a new form of gaming, gambling, or wagering not specifically authorized by law prior to the effective date of this Paragraph shall be effective nor shall such gaming, gambling, or wagering be licensed or permitted to be conducted in a parish unless a referendum election on a proposition to allow such gaming, gambling, or wagering is held in the parish and the proposition is approved by a majority of those voting thereon.
 (b) No form of gaming, gambling, or wagering authorized by law on the effective date hereof shall be licensed or permitted to be conducted in a parish in which it was not heretofore being conducted, except licensed charitable gaming which may be conducted in any parish provided it is conducted in compliance with the law, pursuant to a state license or permit unless a referendum election on a proposition to allow such gaming, gambling, or wagering is held in the parish and the proposition is approved by a majority of those voting thereon.
Article XII, § 6(C)(4) provides:
 (4) Notwithstanding Article III, Section 12, or any other provision of this constitution, the legislature by local or special law may provide for elections on propositions relating to allowing or prohibiting one or more forms of gaming, gambling, or wagering authorized by legislative act.
Art. XII, § 6(C) specifically refers to "Gaming, Gambling, orWagering Referendum Elections". [Emphasis added] In examining whether offtrack wagering is a form of gaming, gambling, or wagering as provided for in art. XII, § 6(C), we are guided by the following rule of interpretation. When a constitutional provision is clear and unambiguous, and its application does not lead to absurd consequences, it must be applied as written without further interpretation in search of its intent. Perschall v. State, 607 So.2d 240 (La. 1997). The term "wagering", as used in Article XII, § 6(C) would seem to include all forms of wagering authorized by law on the effective date of the article XII § 6(C). On October 15, 1996, offtrack wagering at licensed offtrack wagering facilities was authorized by law in the State of Louisiana.
It appears clear that La. Const. art. XII, § 6(C)(1)(b) applies to the first question presented for review. Although offtrack wagering was authorized by law on October 15, 1996 and the establishment of an offtrack wagering facility approved by the majority of the voters in the Town of Richwood in a referendum election held January 1, 1991, it had not been "conducted" in the Town of Richwood, Parish of Ouachita on or before October 15, 1996, the effective date of art. XII, § 6(C). Thus an article 6 C. 1(b) referendum election on a proposition to allow the establishment of an offtrack wagering facility in the parish or municipality would appear to be required before this form of wagering may be licensed or permitted to be conducted in the parish or municipality.
La.R.S. 18:1300.22(A), effective July 15, 2002, provides:
 A. Notwithstanding any other law to the contrary, except as otherwise permitted in Subsection B of this Section, any election required by Article XII. Section 6(C) of the Constitution of Louisiana may be called only by an enactment of the legislature which specifically authorized each such election.
La.R.S. 18:1300.22(A) and La.R.S. 4:214 set forth separate and distinct procedures for calling those elections required prior to licensure of offtrack wagering facilities in any parish. La.R.S. 4:214 requires the Louisiana Racing Commission to "request a referendum by the governing body of a parish only after receipt of an application for licensure of an offtrack wagering facility in that parish by an eligible applicant " La.R.S. 18:1300.22, the later expression of legislative will, provides that all elections provided for in art. XII, § 6(C) "may be called only by an enactment of the legislature which specifically authorized each such election." Thus, the issue arises as to whether La.R.S. 1300:22(A) supercedes or impliedly overrules La.R.S. 4:214 or whether they may be reconciled so that each is given effect.
There is a presumption against implied repeal of legislation, based on the theory that the legislature envisions the whole body of the law when it enacts new legislation. State v. Piazza, 596 So.2d 817 (La. 1992). A law is impliedly repealed only when a new law contains provisions contrary to, or irreconcilable with those of the former law. Macon v.Costa, 437 So.2d 806 (La. 1983). Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. Barilleaux v. NPC, Inc., 98-0728 (La.App. 1 Cir. 4/1/99), 730 So.2d 1062. La.R.S. 18:1300.22 should be reconciled with La.R.S. 4:214 in a manner to give it a construction that is consistent with the expressed terms of the statutes.
Therefore, it would appear a parish or municipality within a parish must comply with the provisions of La. Const. art. XII, § 6(C)(1)(b) and the provisions of La.R.S. 18:1300.22, i.e., holding a referendum election, called only by an enactment of the legislature which specifically authorizes a parish or municipality within a parish to conduct such an election, to permit the establishment of an offtrack wagering facility in the respective parish or municipality. The provisions of La.R.S. 4:214 regarding eligibility, criteria and procedure should also be complied with.
In response to the second question for review, we turn to La.R.S.27:306(A)(3) and Attorney General Opinion 00-477.
La.R.S. 27:306(A)(3) provides, in pertinent part as follows:
 A person owning a Louisiana State Racing Commission licensed pari-mutuel wagering facility or an offtrack wagering facility may be granted a license for the placement of video poker devices in his facility if all other requirements of this Chapter are met. There shall be no limit on the number of video draw poker devices which may be placed at the facility.
A person owning a Louisiana State Racing Commission licensed offtrack wagering facility located in a parish which previously voted not to permit video draw poker device gaming is not eligible to be licensed pursuant to Chapter 6 of the Louisiana Gaming Control Law, La.R.S. 27:1, et seq., for the placement of video draw poker devices. In Attorney General Opinion 00-477, this office found that an act of the legislature would be necessary to authorize a parish or municipality within a parish, in which a majority of the of the voters in the respective parish voted to discontinue the operation of video draw poker devices, to conduct an election to reinstitute video draw poker device gaming in the parish or municipality.
In conclusion, it is the opinion of this office that:
 1) An act of the legislature is necessary to authorize a parish or municipality within a parish where offtrack wagering had not been conducted on or before October 15, 1996, to conduct an election on a proposition to allow the establishment of an offtrack wagering facility in the parish or municipality; and
 2) Pursuant to Attorney General Opinion 00-477, an act of the legislature is necessary to authorize a parish or municipality within a parish to conduct an election to reinstitue video draw poker device gaming in the parish or municipality.
Hopefully this opinion addresses your concerns. Please feel free to call if this office may be of further assistance.
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ Billie J. Larry Deputy Director, Gaming Division
Date Received: 10/08/2002
Date Released: October 18, 2002
[1] Pursuant to La.R.S. 18:1300.21, a majority of the voters of Ouachita Parish voted not to permit video draw poker devices on November 5, 1996.