844 So.2d 311 (2003)
Janice GARDNER, Patricia Cammon, Mary J. Desoto, Ann Rieth, Karen Kelly, Joyce Richardson, Clara Stirgus, Maggie Hollomon Sylvas, Elizabeth Thebault, Marie Ferrina surviving spouse of Frank Ferina and Dorthy Wilson
v.
The STATE of Louisiana, Through the DEPARTMENT OF EDUCATION, the State of Louisiana Through the Division of Administration, and the Jefferson Parish School Board.
No. 2002 CA 0643.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
Writ Denied June 27, 2003.
*312 Jay Alan Ginsberg, Larry Samuel, New Orleans, for Plaintiffs-Appellees, Janice Gardner, et al.
Pamela M. Perkins, R. Christopher Fruge, Joan E. Hunt, Baton Rouge, for Defendants-Appellants, State of Louisiana, Through the Dept. of Education and The State of Louisiana, Through the Division of Administration.
Before: CARTER, C.J., WHIPPLE, and CIACCIO,[1] JJ.
CARTER, C.J.
The State of Louisiana (State)[2] appeals from the trial court's granting in part and denying in part cross-motions for summary judgment in favor of the plaintiffs.[3]

FACTS AND PROCEDURAL HISTORY
In the 1994 Regular Session, the Louisiana Legislature approved a one-time salary supplement for Louisiana teachers and other state employees. The supplement was contingent upon the receipt of land-based casino gaming revenues. See Act No. 15, Section 17 of the 1994 Appropriations Bill (hereafter referred to as "the Act"). The Act provided that eligibility for the one-time salary supplement was based upon employment during a specific time period in 1994, and the amount to be paid to each teacher was to be calculated as a percentage of the state-supported annual salary for teachers, not to exceed $1,200 per person.[4] The Act further provided that the calculation of the annual salary for purposes of determining the supplemental payment amount was to be based on the monthly salary of the teacher in effect on November 30, 1994, and the payment of the supplement was in no way to affect the teacher's existing salary.
Plaintiffs are Louisiana teachers who were employed and on approved sabbatical leave during the time for which the supplemental payment was calculated.[5] Plaintiffs *313 filed suit for declaratory judgment against the State, contending that their one-time salary supplement had not been calculated properly and was contrary to the Act and the statutes governing teachers on sabbatical leave. Instead of being paid the full amount of the one-time salary supplement, the State paid plaintiffs one-half the amount of the salary supplement, based upon their state-supported annual salary during their sabbatical leave period.[6]
Cross-motions for summary judgment were filed. The trial court granted plaintiffs' motion in part and the State's motion in part, finding that the State was required to pay plaintiffs the full amount of their one-time salary supplement rather than one-half the amount paid by the State, and ordered the State to pay each plaintiff a specific amount in judgment. The State appeals, arguing the trial court erroneously relied on LSA-R.S. 17:1183 instead of following the language of the Act and giving deference to the State's interpretation of the Act.

LAW AND ANALYSIS
This dispute essentially revolves around the proper interpretation of Act No. 15 of 1994, § 17. Appellate courts review summary judgments de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. A.K. Durnin Chrysler-Plymouth, Inc. v. Jones, XXXX-XXXX, p. 3 (La.App. 1 Cir. 5/10/02), 818 So.2d 867, 869. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The interpretation of a statute is a question of law that may be decided by summary judgment. In reviewing questions of law, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. A.K. Durnin Chrysler-Plymouth, Inc. v. Jones, 818 So.2d at 869.
The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of government. Rougeau v. Hyundai Motor America, XXXX-XXXX, p. 5 (La.1/15/02), 805 So.2d 147, 151. The starting point in the interpretation of any statute is the language of the statute itself. A.K. Durnin Chrysler-Plymouth, Inc. v. Jones, 818 So.2d at 870. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and its letter shall *314 not be disregarded in search of the intent of the legislature or under the pretext of pursuing its spirit. A statute shall be construed to give meaning to the plain language of the statute, and courts may not extend statutes to situations that the legislature never intended to be covered. Id.
This court outlined the jurisprudence regarding statutory interpretation in Barrilleaux v. NPC, Inc., 98-0728, pp. 4-5 (La. App. 1 Cir. 4/1/99), 730 So.2d 1062, 1064-1065, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672, as follows:
When interpreting a law, the court should give it the meaning the lawmaker intended. It will not be presumed that the legislature intended for any part or provision of the law to be meaningless or useless. It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. The meaning of a statute is to be interpreted by looking to all the sections taken together so that no section, clause, sentence or word becomes superfluous or meaningless.
Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. The legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of the statutory provision is to be determined by a consideration of the statute in its entirety and all other laws on the same subject matter and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the legislature in enacting it. It is reasonable to conclude that the legislature, in passing a statute, did not intend to abrogate any prior law relating to the same subject matter. (Citations omitted.)
With these established principles of statutory interpretation in mind, we now analyze the language of the Act with regard to the one-time salary supplement for teachers without any deference to the trial court's, the State's, or the plaintiffs' various interpretations of the Act. Ultimately, it is the function of the court to review and interpret the applicable law. Lasyone v. Phares, XXXX-XXXX, p. 6 (La.App. 1 Cir. 5/22/02), 818 So.2d 1068, 1072, writ denied, XXXX-XXXX (La.10/14/02), 827 So.2d 423.
The pertinent language of the Act is as follows:
The appropriation provides for a supplemental payment, equal to ... five percent of the state supported annual salary for teachers, ... and not to exceed $1,200 per person. The payment shall only be made to persons who were employed or who were recipients of supplemental pay or retirement benefits between July 1, 1994 and November 30, 1994, and who have remained continuously in that status through November 30, 1994, and through the date of distribution of the payment.
. . .
The calculation of the annual salary... for purposes of determining this supplemental payment amount shall be based on the monthly salary ... in effect on November 30, 1994. Further, the payment shall, in no way, affect existing salary, or supplemental pay schedules, or benefit formulae for any class of employees or retirees, specifically including ... teachers ...." (Emphasis added.)
It is undisputed that the plaintiffs were employed during the applicable time period *315 for receipt of the one-time salary supplement. The Act clearly provides that the calculation of the annual salary for purposes of determining the amount of the one-time salary supplement shall be based on the monthly salary in effect on November 30, 1994. The word "shall" means the provision is mandatory. No further interpretation is necessary. According to the unambiguous language in the Act, it is necessary to determine the monthly salary for each teacher before the supplement may be calculated.
It is presumed that the Legislature enacted the Act with deliberation and full knowledge of all the existing laws relevant to teachers on leave from active duty. See Barrilleaux, 730 So.2d at 1065. It is irrelevant whether the teacher was on active duty or on sabbatical leave. The Act does not distinguish between active duty teachers and those on various types of leave.[7] The only relevant qualification in the Act for receipt of the one-time salary supplement is that the teacher be employed. After that criterion is met, the state-supported annual salary is calculated based on the teacher's monthly salary. The one-time salary supplement is a percentage of the calculated state-supported annual salary. Therefore, we find that the Act clearly sets forth the rate for determining the one-time salary supplement.
According to the Act, each teacher's monthly salary shall be calculated with reference to the rate of compensation he or she earned as of November 30, 1994. The monthly salary for teachers on sabbatical leave must be calculated with reference to LSA-R.S. 17:1184, because that statute governs the compensation to be received while a teacher is on sabbatical leave. It is undisputed that the State referred to LSA-R.S. 17:1184 when calculating the plaintiffs' state-supported annual salaries. The applicable version of LSA-R.S. 17:1184 in effect during the relevant time period when the plaintiffs were on sabbatical leave provided that each teacher granted sabbatical leave shall receive and be paid compensation at the rate of fifty percent of the minimum salary allowed a beginning teacher holding a bachelor's degree.[8] The minimum salary schedule for teachers is legislatively mandated by LSA-R.S. 17:421.3. As authorized by LSA-R.S. 17:1184, teachers on sabbatical leave receive compensation based on the minimum salary schedule. See LSA-R.S. 17:421.3(C).
*316 In conclusion, we find that the Act clearly and unambiguously provides for the computation of the one-time salary supplement based on the monthly salary of the teacher as of November 30, 1994. The Act should be applied as written because its application does not lead to absurd consequences. We find that the State's calculation of each plaintiffs' one-time salary supplement was in accordance with the provisions of the Act. The trial court erred in looking beyond the words of the Act to find that plaintiffs were entitled to the one-time salary supplement based on "their salary as if they were on active duty."
Accordingly, we reverse the trial court's judgment granting plaintiffs' motion for summary judgment in part and denying the State's motion for summary judgment in part. Furthermore, we hereby grant the state's motion for summary judgment and find that the plaintiffs are not entitled to more than they have already received for their one-time salary supplement. Costs of this appeal are to be paid by the plaintiffs-appellees.
REVERSED AND RENDERED.
NOTES
[1] Hon. Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The defendant-appellant is the State of Louisiana, through the Division of Administration and through the Department of Education.
[3] The individually named plaintiffs are Janice Gardner, Patricia Cammon, Mary J. DeSoto, Ann Rieth, Karen Kelly, Joyce Richardson, Clara Stirgus, Maggie Hollman Sylvas, Elizabeth Thebault, Marie Ferrina as surviving spouse of Frank Ferrina, Dorthy Wilson, Doris Holmes, Rosa Stevens, and Genella Powell.
[4] It is undisputed that the rate for the one-time salary supplement was ultimately established at 4.176% with a maximum of $1,002.24 per person, in accordance with the provisions of the Act.
[5] According to plaintiffs' petition, Frank Ferrina was not on any type of leave during the relevant time period; however, the specifics of Frank Ferrina's claim are irrelevant for purposes of this appeal.
[6] It is undisputed that the responsibility for distributing the funds to implement the one-time salary supplement was delegated in the Act by the Legislature to the State, through the Division of Administration, with the actual calculation of the salary supplement for teachers on sabbatical leave made by the State, through the Department of Education, with acquiescence of the Division of Administration. An exhibit attached to the State's motion for summary judgment was a July 26, 1995 memorandum from the State Superintendent of Education on behalf of the Department of Education to all local school system superintendents and business managers. The Superintendent stated that "[d]ue to the volume of questions concerning the recent state salary supplements paid to sabbatical employees, the following information outlines the basis on which these particular supplements were calculated." The memorandum further provides that the supplement for these employees "was calculated at fifty percent of the state minimum teachers salary schedule based on actual years of experience and educational level."
[7] If the Act had specifically limited the one-time salary supplement to teachers on active duty, then plaintiffs' reliance on LSA-R.S. 17:1183 would be relevant. LSA-R.S. 17:1183 provides that teachers on sabbatical leave shall enjoy all rights and privileges they would have enjoyed had they remained in active service. However, LSA-R.S. 17:1183 does not enhance the rights of teachers on sabbatical leave, it merely preserves the status of teachers during the leave. See Scott v. Dennis, 392 So.2d 169 (La.App. 4 Cir.1980). Therefore, LSA-R.S. 17:1183 does not provide for nor authorize a change in the compensation rate for teachers on sabbatical leave that is specifically outlined in LSA-R.S. 17:1184.
[8] The State actually calculated at a rate of fifty percent of the minimum salary allowed based on actual years of experience and education level rather than a beginning teacher holding a bachelor's degree. During the relevant time period, LSA-R.S. 17:1184 also provided that a teacher on sabbatical leave could elect to be paid the difference between the salary he would have received during the leave if in active service and the salary which a day-by-day substitute would receive during the leave. The record does not reveal the compensation option of any of the plaintiffs while on their sabbatical leave. However, the plaintiffs do not dispute the state's method of calculating their state-supported annual salaries while on sabbatical leave; they only dispute the calculation of the one-time salary supplement based on their sabbatical salary instead of active duty salary.