STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


05-1251



MICHAEL A. CASTILLE

VERSUS

THE OLD EVANGELINE DOWNS, L.L.C.


**********
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
ST. MARTIN PARISH, NO. 69096 DIV. A
HONORABLE GERALD B. WATTIGNY, DISTRICT JUDGE
**********


SYLVIA R. COOKS
JUDGE


**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and James T. Genovese, Judges.

REVERSED.

Allan L. Durand
235 Rue France
Lafayette, LA  70508
(337) 237-8501
COUNSEL FOR PLAINTIFF/APPELLEE:
    Michael Castille

Henry C. Perret, Jr.
John W. Kolwe
Perret Doise
600 Jefferson St., Suite 1600
P.O. Drawer 3408
Lafayette, LA  70502-3408
(337) 262-9000
COUNSEL FOR DEFENDANT/APPELLANT:
    The Old Evangeline Downs, L.L.C.

**Harry T. Lemmon**
**650 Poydras Street, Suite 2335**
**New Orleans, LA 70130**
**(504) 581-5644**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **The Old Evangeline Downs, L.L.C.**

**David F. Waguespack**
**Lemle & Kelleher, L.L.P.**
**601 Poydras Street, 21st Floor**
**New Orleans, LA 70130**
**(504) 586-1241**
**COUNSEL FOR *AMICUS CURIAE*:**
      **Churchill Downs Louisiana Horseracing Company, L.L.C.**

**C. James Gelpi**
**David McFadden**
**Dan Zimmerman**
**Gelpi & Associates**
**203 Carondelet Street, Suite 907**
**New Orleans, LA 70130**
**(504) 522-1153**
**COUNSEL FOR *AMICUS CURIAE*:**
      **Louisiana Horseman's Benevolent and Protective Association 1993, Inc.**

**COOKS, Judge.**

This case involves a plan by the Old Evangeline Downs, L.L.C. (hereafter Evangeline Downs) to offer both off track betting and video poker at its facility in Henderson, Louisiana (located in St. Martin Parish). The trial court issued an injunction preventing Evangeline Downs from offering video poker at its Henderson facility. For the following reasons, we reverse the trial court's judgment, and dismiss the Plaintiff's petition.

## FACTS AND PROCEDURAL HISTORY

In 1997, the Louisiana legislature authorized any racetrack licensed by the Louisiana Racing Commission to operate off track pari-mutual betting facilities (hereafter OTBs). OTBs offer wagering on various horse racing facilities located thorughout the country. The voters in St. Martin Parish approved OTBs in 1989. In 1990, the Louisiana legislature authorized video poker operations at OTBs. From 1993 to 1995, Evangeline Downs operated an OTB in St. Martin Parish located in Stephensville. Both off track betting and video poker were offered at the Stephensville OTB.

In 1996, La.Const. art. 12, § 6 was amended to add paragraphs (C)(1)(a) and (b), which provides as follows:

> **(C)     Gaming, Gambling, or Wagering Referendum Elections.**
> (1)(a) No law authorizing a new form of gaming, gambling, or wagering not specifically authorized by law prior to the effective date of this Paragraph shall be effective nor shall such gaming, gambling, or wagering be licensed or permitted to be conducted in a parish unless a referendum election in a proposition to allow such gaming, gambling, or wagering is held in the parish and the proposition is approved by a majority of those voting thereon.
>
> (b) No form of gaming, gambling, or wagering authorized by law on the effective date hereof shall be licensed or permitted to be conducted in a parish in which it was not heretofore being conducted, except licensed charitable gaming which may be conducted in any parish provided it is conducted in compliance with the law, pursuant to state license or permit unless a referendum election on a proposition to allow such

-1-

gaming, gambling, or wagering is held in the parish and the proposition is approved by a majority of those voting thereon.

That same year the legislature enacted La.R.S. 18:1300.21, which required an election to be held in every parish at the time of the 1996 congressional elections to determine whether to prohibit or to allow video poker gambling. On their ballots, voters in St. Martin Parish were presented with the following choice:

LOCAL OPTION ELECTION: Within St. Martin Parish: Shall the operation of video draw poker devices be permitted? YES ( ) NO ( ).

St. Martin Parish voters approved the operation of video poker gaming in the parish.

On November 5, 2004, the Louisiana Racing Commission granted Evangeline Downs a license to operate an OTB in Henderson. Evangeline Downs planned on offering both off track betting and video poker wagering. Plaintiff, who was the owner of a nearby truck stop which conducted video poker gaming, filed suit against Evangeline Downs, seeking preliminary and permanent injunctions to prevent Evangeline Downs from offering video poker gaming at its Henderson facility. Plaintiff, in his petition, argued the election in 1989 which approved OTB's did not authorize combining off track betting with any other form of gambling. Plaintiff urged what Evangeline Downs seeks to do is, in effect, open a "mini-casino" in St. Martin Parish that incorporates multiple forms of gaming, including more extensive gambling than was being conducted in St. Martin Parish at the time of the 1996 amendment to the Louisiana Constitution. Plaintiff argued the amendment to La.Const. art. 12, § 6, which added subsections (1)(a) and (b), requires a referendum election in St. Martin Parish before Evangeline Downs can offer video poker at its Henderson OTB.

Evangeline Downs argued La.Const. art. 12, § 6(C)(1)(a) only requires a referendum when there is a "new form of gaming, gambling, or wagering not

specifically authorized by law prior to the effective date of this paragraph." Since both off track betting and video poker were legislatively authorized prior to the 1996 amendment, this provision is not applicable. As to La.Const. art. 12, § 6(C)(1)(b), it only required a referendum for a previously authorized "form of gaming, gambling or wagering in a parish in which it was not heretofore being conducted." Because both off track betting and video poker were conducted in St. Martin Parish prior to the 1996 amendment, Evangeline Downs argues this section is also inapplicable.

The trial court found the language "heretofore being conducted" was ambiguous. It felt that phrase could mean that the "gambling or wagering had never before been conducted in that parish" or that the "gambling or wagering was not being conducted in that parish at the time of the vote." The trial court also stated it believed the 1996 amendment was intended to be restrictive and not expansive of gambling. The trial court then set forth the following reasons for its decision:

> So I think that the ambiguity of the statute leads to the interpretation that I have and in the Constitution that, since it was – since wagering or gambling by off-track betting and video poker machines in the same facility were not being conducted at the time of the vote, that under the constitutional article they were not or had not been or should not be considered as having been there at that time, because they were not being conducted at the time of the election.
>
> So the next question becomes: Does St. Martin Parish now have to have an election in which the people in St. Martin Parish would have to approve a combination of off-track wagering or betting and video poker in the same establishment?
>
> Also, because of the type of establishment in this instance, would a referendum be necessary in St. Martin Parish, because it would increase the amount of prizes available and the number of machines available in a facility which had both off-track betting and video poker machines?
>
> My conclusion is that this has not been approved in St. Martin Parish and that it is an expansion of a wagering or gambling in St. Martin Parish, which has not been approved by referendum and was not preexisting the constitutional amendment, as I have interpreted it. And therefore, a referendum would be necessary for the defendants in this case to open their facility.
>
> For those reasons, I'm going to grant the preliminary injunction and grant the relief for permanent injunction today, at the cost of

defendants.

Evangeline Downs appealed the trial court's judgment, asserting the following assignments of error:

1.  The trial court misinterpreted La.Const. art 12, § 6 to require a referendum to approve off track betting and video poker gaming "in a single facility" when both forms of gaming had been authorized by the Legislature and thereafter approved in separate referendum elections by the voters of the parish.

2.  The trial court erred in admitting affidavits of legislators stating post-enactment opinions as evidence of legislative intent.

3.  The trial court erred in considering and misinterpreting the amount of prizes available to video poker patrons at OTBs, as opposed to truck stops and restaurants.

**ANALYSIS**

Evangeline Downs argues the trial court misinterpreted the amendment in question by imposing a requirement for a referendum to approve multiple forms of gaming in a single facility, even though both forms of gaming have been approved in separate referenda.

Nothing in La.Const. art. 12, § 6(C)(1)(a) and (b) references the type of facility where the gaming occurs. The phrase "form of gaming" found in the amendment refers to the games themselves and does not address whether more than one form of gaming may be operated in a single facility. The trial court focused on the facility where the gaming took place rather than the "form of gaming," which is the focus of the amendment. Louisiana Constitution Article 12, § 6(C)(1)(a) prohibits a "new form of gaming" that may be enacted by the Legislature subsequent to the effective date of that amendment, unless approved by a referendum election. We find the referendum requirement in this section is inapplicable, because neither off track betting nor video poker is a new form of gaming in St. Martin Parish as defined in the section. Likewise, the type of facility where gaming occurs is not a "form of

gaming." Louisiana Constitution Article 12, § 6(C)(1) plainly does not require a referendum on the *facility* or the *location* of the forms of gaming, but simply requires voter approval of the form of gaming.

Louisiana Constitution Article 12, § 6(C)(1)(b) prohibits previously authorized forms of gaming in a parish in which it "was not heretofore being conducted" unless a referendum election is first held. The trial court held the language "heretofore being conducted" was ambiguous. Evangeline Downs acknowledges those "words are not a model of clarity." When language is susceptible of different meanings, a court should give it the meaning that best conforms with the purpose of the law. La.Civ.Code art. 10. A court should also evaluate the context in which the words occur and the text of the law as a whole. La.Civ.Code. Art. 12.

Plaintiff is correct in stating that the general purpose of La.Const. art. 12, § 6(C) was to prevent the overall expansion of gaming without a vote of the people. However, the 1996 amendment plainly addresses only expansion of *new* forms of gaming and the expansion of previously authorized forms of gaming into *new areas.* The committee minutes indicate representative Stephen Windhorst, the author of the amendment, told the committee his bill "would also prevent existing forms of gambling from expanding into *other areas* without a vote of the people." (Emphasis added.) This reference to "expanding into other areas[,]" clearly indicates the bill's intent was to prevent the introduction of any forms of gaming previously approved by the legislature into "other areas" where that particular form of gaming had not been introduced. As stated previously, video poker had been conducted for years both prior to and after the amendment in St. Martin Parish.

We must presume that the legislature chose the phrase "was not heretofore being conducted" for a specific reason. All words in a statute must be given their

intended effect. In essence, the Plaintiff's interpretation, and the trial court's subsequent ruling, read the word heretofore out of the amendment. Their interpretation would hold that La.Const. art. 12, § 6(C)(1)(b) would prohibit any form of gaming "not being conducted" at the time of the effective date of the amendment. This interpretation violates basic statutory construction by giving no meaning to the word "heretofore." As Evangeline Downs argues, if the legislature had intended that the form of gaming had to be conducted *at the time* of the amendment, the Legislature would have chosen not to include heretofore in the wording of the amendment.

Several Louisiana opinions of the Attorney General have interpreted the phrase "was not heretofore being conducted" to mean on or before October 15, 1996 (the effective date of the amendment). Attorney General Opinion No. 05-34 stated "a parish where off-track wagering has not been conducted *on or before* October 15, 1996, must comply with the effective date of La.Const. art. 12, § 6(C)(1)(b). Attorney General Opinion No. 02-323 stated "[w]here off-track wagering has not been conducted in a parish *on or before* October 15, 1996, a local referendum election must be called in order to allow such wagering in that parish[.]" These Attorney General's opinions clearly support Evangeline Downs' interpretation that the use by the legislature of "was not heretofore being conducted" meant that if a particular form of gaming had been legally conducted in the past, that form of gaming could be conducted after the amendment without a referendum.

Further, a court should interpret laws on the same subject matter in reference to one another and should interpret laws by adopting a construction of the provision in question that harmonizes and reconciles it with other laws. *See Louisiana Municipal Ass'n v. State of Louisiana*, 04-227 (La. 1/19/05), 893 So.2d 809; *Barrilleaux v. NPC, Inc.*, 98-728 (La.App. 1 Cir. 4/1/99), 730 So.2d 1062, *writ*

*denied*, 99-1002 (La. 5/28/99), 743 So.2d 672. In reaching its decision, it appears the trial court ignored several Louisiana laws which govern the operation of video poker gaming at OTBs in parishes across the state. Louisiana Revised Statutes 27:306(A)(3) illustrates the intention of the legislature to allow video poker in OTBs. It provides in pertinent part "[a] person owning a Louisiana State Racing Commission licensed pari-mutuel wagering facility or an offtrack wagering facility may be granted a license for the placement of video draw poker devices in his facility if all other requirements of this Chapter are met."

Louisiana Revised Statutes 27:301 specifically defines racetracks and their OTBs as "licensed establishments," thereby authorizing those establishments to offer video poker gaming at their facilities, provided all licensing requirements are met. Clearly, this allows for both video poker and offtrack betting in the same facility. Finally, La.R.S. 27:352 states that it is the "public policy of this state" that the "[a]uthorization of certain specified gaming activities, . . . will revitalize and rehabilitate [pari-mutel wagering facilities] within strategically located geographic areas of the state, and will further result in overall economic development and additional revenues to the state and parishes where those facilities are located." Video poker devices at OTBs are one additional way of generating further revenues to increase purses that are paid to horse owners. *See* La.R.S. 27:318.

The Plaintiff's interpretation of La.Const. art. 12, § 6 (C)(1) would clearly not be in harmony with the above cited statutes. Louisiana law has consistently supported and acknowledged the vital importance to the horseracing industry of allowing racetracks and OTBs to conduct video poker gaming.

The trial court committed reversible error by applying La.Const. art. 12, § 6(C)(1) to *facilities* where gaming is conducted rather than applying the provision to

*forms* of gaming. The legislature has expressly authorized the operation of video poker at OTBs. The voters in St. Martin Parish have approved both offtrack betting and video poker. Therefore, all constitutional requirements have been met, and a referendum is not required for Evangline Downs to conduct video poker gaming at its Henderson OTB. The trial court's judgment is reversed, the injunction is dissolved, and the Plaintiff's petition is dismissed.

Having found merit in Evangeline Downs' first assignment of error, we need not address their remaining assignments.

**DECREE**

The judgment of the trial court granting Plaintiff's injunction against Evangeline Downs is reversed, and Plaintiff's petition is dismissed. All costs of this appeal are assessed against Plaintiff-Appellee.

**REVERSED.**