818 So.2d 867 (2002)
A.K. DURNIN CHRYSLER-PLYMOUTH, INC.
v.
Katherine Lee JONES, Nobel Insurance Company and U.S. Agencies.
No. 2001 CA 0810.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*868 Stephen W. Glusman, Baton Rouge, Counsel for Plaintiff/Appellee A.K. Durnin Chrysler-Plymouth, Inc.
David P. Adams, Baton Rouge, Counsel for Defendant/Appellant Nobel Insurance Company.
Lisa Leslie Boudreaux, Baton Rouge, Counsel for Defendant/Appellee Katherine Lee Jones.
Before: WHIPPLE, FOGG, and GUIDRY, JJ.
GUIDRY, Judge.
Defendant, Nobel Insurance Company (Nobel), appeals from the trial court's granting of a partial summary judgment in favor of plaintiff, A.K. Durnin Chrysler-Plymouth Inc. (Durnin), in this action to recover payment for repairs made to an automobile. For the reasons that follow, we affirm the judgment of the trial court.

*869 FACTS AND PROCEDURAL HISTORY
On or about December 15, 1999, a vehicle owned by Darrell King, and operated by Trina Collins Vinsang, allegedly struck a Dodge Caravan owned by Katherine Jones and operated by James Jones. Trina Collins Vinsang was cited as the sole cause of the resulting accident. At the time of the accident, Nobel had in full force and effect a policy of liability insurance issued to Darrell King. Also, at the time of the accident, U.S. Agencies had a policy of liability insurance issued to Katherine Jones.
As a result of the automobile accident, the van owned by Katherine Jones sustained property damage, which was repaired by Durnin. Nobel denied liability for payment of the repairs made to the Jones vehicle. Subsequently, Durnin filed suit on May 18, 2000, seeking sequestration of the Jones vehicle and recovery for the repair amount of $9,505.15 in solido against Katherine Jones, Nobel and U.S. Agencies. US Agencies was subsequently voluntarily dismissed and Durnin filed a motion for summary judgment on November 16, 2000. In a supplemental memorandum in support of its motion for summary judgment, filed January 8, 2001, Durnin stated its motion was more properly a motion for partial summary judgment in that it sought determination on only some of the various claims presented, namely the effect of La. R.S. 32:866. A hearing on the motion for partial summary judgment was held on January 22, 2001. In a judgment rendered in open court and signed on February 13, 2001, the trial court granted Durnin's motion for partial summary judgment and declared the provisions of La. R.S. 32:866 inapplicable. In addition, the court designated the judgment as a partial final judgment.

ASSIGNMENTS OF ERROR
Nobel now suspensively appeals from this judgment and asserts the following assignments of error:
1. The trial court erred in holding that La. R.S. 32:866 is a penal statute and as such must be strictly construed.
2. The trial court erred in holding that La. R.S. 32:866 did not apply in this case to bar the first $10,000 of recovery to an owner of a vehicle making a claim for property damage when the vehicle was being operated by an excluded driver.

DISCUSSION

Standard of Review
Appellate courts review summary judgments de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Industrial Indemnity Company of Northwest v. Central National Insurance Company of Omaha, 99-2535, p. 8 (La. App. 1st Cir.12/22/00), 775 So.2d 1246, 1250-1251, writ denied, 01-0225 (La.4/12/01), 790 So.2d 1. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The interpretation of a statute is a question of law, which may be decided by summary judgment. Levy v. Vincent, 01-0277, p. 3 (La.App. 3rd Cir.7/18/01), 796 So.2d 34, 36. In reviewing questions of law, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. State, Louisiana *870 Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, p. 5 (La.App. 1st Cir.8/21/96), 694 So.2d 316, 319.

Statutory Interpretation
Before addressing the broader issue of whether La. R.S. 32:866 should be applied to the case sub judice, it is necessary to outline certain key principles of statutory interpretation. The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of government. Rougeau v. Hyundai Motor America, 01-1182, p. 2 (La.1/15/02), 805 So.2d 147, 149; citing Touchard v. Williams, 617 So.2d 885, 888 (La.1993). The starting point in the interpretation of any statute is the language of the statute itself. Schackai v. Louisiana Board of Massage Therapy, 99-1957, p. 12 (La.App. 1st Cir.9/22/00), 767 So.2d 955, 962, writ denied, 00-2898 (La.12/8/00), 776 So.2d 464. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and its letter shall not be disregarded in search of the intent of the legislature or under the pretext of pursuing its spirit. Schackai, 99-1957 at 12, 767 So.2d at 962; see La. C.C. art. 9 and La. R.S. 1:4. A statute shall be construed to give meaning to the plain language of the statute. Vogt v. Board of Levee Commissioners of Orleans Levee District, 95-1187, p. 10 (La.App. 4th Cir.9/4/96), 680 So.2d 149, 155.
In Barrilleaux v. NPC, Inc., 98-0728, p. 4 (La.App. 1st Cir.4/1/99), 730 So.2d 1062, 1064-1065, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672, this court further outlined the jurisprudence regarding statutory interpretation as follows:
When interpreting a law, the court should give it the meaning the lawmaker intended. It will not be presumed that the legislature intended for any part or provision of the law to be meaningless or useless. It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. The meaning of a statute is to be interpreted by looking to all the sections taken together so that no section, clause, sentence or word becomes superfluous or meaningless.
Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. The legislature is presumed to have enacted each such statute with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of the statutory provision is to be determined by a consideration of the statute in its entirety and all other laws on the same subject matter and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the legislature in enacting it. It is reasonable to conclude that the legislature, in passing a statute, did not intend to abrogate any prior law relating to the same subject matter. (Citations omitted.)
Additionally, courts may not extend statutes to situations, which the legislature never intended to be covered thereby. Schackai, 99-1957, at 13, 767 So.2d at 962.

Analysis
With these established principles of statutory interpretation in mind, we turn our attention to La. R.S. 32:866, the so called "no pay, no play" provision, which provides in pertinent part:

*871 There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security. La. R.S. 32:866(A)(1).
The "no pay, no play" provision is clear and unambiguous in delineating when the bar to the first $10,000 of bodily injury or property damage occurs. Katherine Jones, as owner of the vehicle involved in the motor vehicle accident, would be barred from recovering the first $10,000 of property damage if she failed to own or maintain compulsory motor vehicle liability security. As evidenced by the record, Katherine Jones had a motor vehicle liability policy, issued by U.S. Agencies, in full force and effect at the time of the accident. Therefore, for the reasons that follow, we find that La. R.S. 32:866 does not apply in this case.
As stated above, the determination of whether La. R.S. 32:866 applies to the case sub judice rests on whether the owner of the vehicle who is making a claim for property damage owned or maintained compulsory motor vehicle liability security in accordance with La. R.S. 32:861.[1] One of the methods of owning or maintaining motor vehicle liability security is to obtain a motor vehicle liability policy. La. R.S. 32:861(A)(1). "Motor vehicle liability policy" is defined in La. R.S. 32:900(A) as follows:
A "Motor Vehicle Liability Policy" as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued except as otherwise provided in R.S. 32:899, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
In addition, La. R.S. 32:900(B)(2) provides what must be contained in the policy of liability insurance, and states in pertinent part as follows:
Such owner's policy of liability insurance... shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle....
However, La. R.S. 32:900(L), enacted in 1990, provides that "[n]otwithstanding the provisions of Paragraph (B)(2) of this Section, an insurer and an insured may by written agreement exclude from coverage the named insured and the spouse of the named insured ...."
In reading La. R.S. 32:866 in conjunction with the statutory provisions of the compulsory motor vehicle liability security and motor vehicle liability policy statutes, we believe the clear and unambiguous language of the "no pay, no play" provision of La. R.S. 32:866 renders the provision inapplicable to this case. As previously mentioned, *872 the record supports, and appellant acknowledges, that Katherine Jones, the owner making a claim for property damage, obtained a motor vehicle liability policy from U.S. Agencies, which was in full force and effect at the time of the accident.
Appellant, nevertheless, argues that La. R.S. 32:866 should still be applied to this case because at the time of the accident, the vehicle owned by Katherine Jones was in effect "uninsured", as it was being operated by a driver specifically excluded from Katherine Jones' policy. However, we find that appellant fails to recognize that according to La. R.S. 32:861 and La. R.S. 32:900, in obtaining a motor vehicle liability policy, the insured is specifically allowed to exclude a spouse. The fact that Katherine Jones specifically excluded James Jones, her spouse, from her policy does not change the fact that she obtained a liability policy in conformity with La. R.S. 32:900, nor does it alter her compliance with the compulsory motor vehicle liability security law.
Additionally, appellant contends that the legislature intended to ensure that there were no uninsured vehicles being operated on our highways and not applying La. R.S. 32:866 would lead to an absurd result in contravention of the legislative intent. However, the state supreme court in Progressive Security Insurance Company v. Foster, 97-2985, p. 14 and 21 (La.4/23/98), 711 So.2d 675, 684 and 688, addressing the constitutionality of La. R.S. 32:866, acknowledged that reducing the number of uninsured motorists on the highways was the state's interest, but that the legislature's public purpose, as enunciated in Section 1 of the Omnibus Premium Reduction Act of 1997, was to promote compliance with the state's compulsory liability insurance law and to take the initiative so that concomitant benefits may flow therefrom. This stated public purpose supports our reading of the statute and our determination as to its application to this case. To extend the provision as appellant argues would abrogate the clear and unambiguous language of the statute as well as the specified legislative purpose.
Finally, we pretermit the issue of whether La. R.S. 32:866 is a penal statute, as we are bound to apply the clear and unambiguous language of the statute as written. See Elevating Boats, Inc. v. St. Bernard Parish, 00-3518, p. 18 (La.9/5/01), 795 So.2d 1153, 1166. See also Vining v. Democratic Executive Committee for 32nd Representative District, 204 So.2d 801, 803 (La.App. 2nd Cir.1967), writ refused, 251 La. 678, 205 So.2d 442 (1967).

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court; all costs of this appeal are to be borne by the appellant, Nobel Insurance Company.
AFFIRMED.
NOTES
[1] La. R.S. 32:861(A)(1) provides in pertinent part that "[e]very self-propelled motor vehicle registered in this state ... shall be covered by an automobile liability policy with liability limits as defined by R.S. 32:900(B)(2) or 900(M) ...."