881 So.2d 1214 (2004)
Marolyn W. BRYANT
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION and Robertnique W. Williams.
Virginia McCray
v.
Geno Wesley Jenkins, Maurice Jenkins and Allstate Insurance Company.
Nos. 2003-C-3491, 2004-C-0028.
Supreme Court of Louisiana.
September 9, 2004.
*1215 Nelson, Zentner, Sartor & Snellings, Thomas G. Zentner, Jr., Monroe, for Applicant.
Street & Street, C. Daniel Street, for Respondent.
KIMBALL, Justice.
These consolidated cases involve the narrow issue of whether La. R.S. 32:866, the "no pay, no play" law, applies to bar a portion of a named insured's recovery of her own bodily injury and/or property damages when an excluded driver is involved in an accident while driving the named insured's vehicle. For the reasons that follow, we find that when an insurance policy affords no coverage when an excluded driver is operating a named insured's vehicle, policy considerations dictate a conclusion that La. R.S. 32:866 applies to bar a portion of the named insured's recovery when the excluded driver is involved in an accident while driving the named insured's vehicle with the permission of the named insured.

Facts and Procedural History

Marolyn W. Bryant
On October 26, 2002, Justin Bryant was driving a 1990 Ford Mustang owned by his mother, Marolyn Bryant, on Highway 167 in Jonesboro, Louisiana, when Robertnique Williams ran a red light and collided with his vehicle. At the time of the accident, Williams was covered by an automobile liability insurance policy issued by United Services Automobile Association ("USAA"). The Mustang owned by Marolyn Bryant was insured by Direct General Insurance Company ("DGIC"). The Bryant policy expressly excluded seventeen-year-old Justin, who was a resident of Marolyn Bryant's household, from coverage.
*1216 On January 10, 2003, Marolyn Bryant ("plaintiff") filed a petition for damages against Williams and USAA ("defendants"), alleging that Williams's negligence was the sole and legal cause of the accident and that she suffered property damage as a result of the accident. Specifically, plaintiff alleged that her automobile was rendered a total loss and that she was therefore entitled to recover $5,000, or the value of her vehicle, together with damages for loss of use of the vehicle from defendants. In answer to plaintiff's petition, defendants denied the allegations contained in the petition and asserted the provisions of La. R.S. 32:866, the "no pay, no play" statute, as an affirmative defense. Defendants contended that the statute applied to bar plaintiff's recovery because plaintiff's son was uninsured due to the fact that he was an excluded driver under plaintiff's policy at the time of the accident.
Plaintiff then filed a Motion for Summary Judgement on Insurance Coverage seeking a judgment as a matter of law that defendants could not deny coverage on the basis of La. R.S. 32:866. Plaintiff argued that the statute, which seeks to punish an owner or operator who fails to maintain compulsory motor vehicle liability security, did not apply because she did, in fact, maintain automobile liability coverage in compliance with the compulsory motor vehicle liability security law. Attached to plaintiff's motion was her affidavit and a certified copy of the insurance policy containing the named driver exclusion. Defendants opposed the motion, contending that the "no pay, no play" law applies to situations in which an excluded driver was operating the vehicle at the time of the accident.
The district court granted plaintiff's motion for summary judgment, holding that defendants could not deny coverage on the basis of La. R.S. 32:866. In its written reasons for judgment, the district court, relying on the case of A.K. Durnin Chrysler-Plymouth, Inc. v. Jones, 01-0810 (La.App. 1 Cir. 5/10/02), 818 So.2d 867, explained that plaintiff "would not be excluded from collecting on her insurance policy because this was not an `uninsured' vehicle for the purposes of L[a]. Revised Statutes 32:866...." After expressly determining there was no just reason for delay in accordance with La. C.C.P. art. 1915(B)(1),[1] the district court designated the judgment as final.
On appeal, the court of appeal affirmed the judgment of the district court. Bryant v. United Servs. Auto. Ass'n, 37,926 (La.App. 2 Cir. 12/10/03), 862 So.2d 446. The court of appeal found that La. R.S. 32:866 clearly and unambiguously bars owners from recovering the first $10,000 of property damage if they failed to own or maintain compulsory motor vehicle liability security. The court noted, however, that there is a split among various courts of appeal regarding whether the "no pay, no play" law applies to bar an insured owner from recovering his or her own damages when an excluded driver is operating the vehicle at the time of the accident. Citing A.K. Durnin, supra, the court concluded that because La. R.S. 32:900 specifically allows an insured to exclude a child who is a resident of the same household, *1217 the fact that plaintiff specifically excluded her son from coverage under her policy did not alter her compliance with the compulsory motor vehicle liability security law. Therefore, the court of appeal concluded, because plaintiff had an automobile insurance policy on the vehicle at the time of the accident, she is entitled to recover property damages without any deduction under the "no pay, no play" law.

Virginia McCray
On September 16, 2000, Stacy McCray was driving a 1986 Chrysler Fifth Avenue owned by his wife, Virginia McCray, on Interstate 10 in Jefferson Parish when the vehicle he was driving was struck from behind by a vehicle being driven by Geno Jenkins. Virginia McCray was a guest passenger in the Chrysler Fifth Avenue. The vehicle being driven by Geno Jenkins was owned by Maurice Jenkins and insured by a policy of motor vehicle liability insurance issued by Allstate Insurance Company ("Allstate"). The vehicle owned by Virginia McCray was insured by Young American Insurance Company ("YAIC"). The McCray policy expressly excluded Stacy McCray from all coverage provided by the policy.
On May 31, 2001, Virginia McCray ("plaintiff") filed a petition for damages against Geno Jenkins, Maurice Jenkins, and Allstate ("defendants"), alleging that Geno Jenkins's negligence was the cause of the accident and that she suffered bodily injury, loss of earnings, and property damage as a result of the accident. Plaintiff further alleged that the negligence of Geno Jenkins could be imputed to Maurice Jenkins as he entrusted a dangerous instrumentality to the care and control of an individual who he knew or should have known to be a careless and reckless driver. In answer to plaintiff's petition, defendants denied the allegations contained in the petition and asserted the applicability of the "no pay, no play" statute.
Subsequently, defendants filed a motion for summary judgment seeking judgment as a matter of law that La. R.S. 32:866 applies to prohibit plaintiff from recovering the first $10,000 of her claim. Defendants contended that because the driver of plaintiff's vehicle was excluded from coverage under her policy, there was no insurance coverage in full force and effect on plaintiff's vehicle. Consequently, defendants argued, plaintiff is barred from recovering a portion of her damages pursuant to the "no pay, no play" statute. Plaintiff opposed the motion, arguing that although her husband is precluded from recovering his damages, she is entitled to full redress for her damages because her vehicle was insured as required by law.
After a hearing on the matter, the district court denied defendants' motion for summary judgment, stating that because plaintiff had insurance on the vehicle, she had complied with the law. The matter was tried on December 3, 2002. In lieu of live testimony, the parties submitted to the district court a joint stipulation of facts and a number of exhibits. Included in the stipulation were the facts that Geno Jenkins was solely at fault for the accident, that the written agreement providing for the exclusion of Stacy McCray was in full force and effect on the date of the accident, that the agreement excluded any insurance coverage under the YAIC policy to Stacy McCray for use or operation of the Chrysler Fifth Avenue involved in the accident, that Stacy McCray's driver's license had been suspended since 1991, and that plaintiff had given her husband permission to operate the vehicle on the date of the accident. Certain items of damage were included in the stipulation. On December 23, 2002, the district court rendered judgment in favor of plaintiff for a *1218 total amount of $14,890.65, together with interest and costs, finding that the "no pay, no play" statute does not apply in this case.
On appeal, a five-judge panel of the court of appeal reversed the district court's ruling that La. R.S. 32:866 is inapplicable to this case. In reaching its decision, the court of appeal rejected the reasoning of the A.K. Durnin court, choosing instead to follow the court of appeal's holding in Lantier v. State Farm Mut. Auto. Ins. Co., 02-0301 (La.App. 3 Cir. 10/2/02), 827 So.2d 597, writ denied, 02-2628 (La.12/13/02), 831 So.2d 991. The court of appeal found that the "no pay, no play" statute applies to this case because plaintiff did not have liability coverage for her vehicle when she allowed Stacy McCray to drive it. The court of appeal noted that the purpose of the "no pay, no play" law is to discourage the operation of uninsured vehicles and that while La. R.S. 32:900(L) permits an insurer and an insured to specifically exclude the named insured's spouse from coverage, the statute does not permit the insured to allow an excluded spouse to operate the vehicle. The court of appeal therefore found that La. R.S. 32:866 applies, reversed the judgment of the district court on this issue, and amended plaintiff's award accordingly.
In two separate writ applications, Williams and USAA and Virginia McCray sought review of the judgments of the courts of appeal described above. This court granted certiorari and consolidated the matters. Bryant v. United Servs. Auto. Ass'n, 03-3491 (La.3/19/04), 869 So.2d 834 and McCray v. Jenkins, 04-0028 (La.3/19/04), 869 So.2d 835. We granted certiorari primarily to resolve a split among the circuit courts of appeal on the narrow issue of whether La. R.S. 32:866 applies to bar a specified portion of a named insured's recovery when an excluded driver is involved in an accident while driving the named insured's vehicle.

Discussion
The Louisiana Motor Vehicle Safety Responsibility Law, La. R.S. 32:851 through La. R.S. 32:1043, sets forth a mandatory, comprehensive scheme to protect the public from damage caused by motor vehicles. Adams v. Thomas, 98-2003, pp. 3-4 (La.4/13/99), 729 So.2d 1041, 1043; Simms v. Butler, 97-0416, p. 2 (La.12/2/97), 702 So.2d 686, 687. The law requires that the owner of every motor vehicle registered in this state, with limited exception, obtain proof of security prior to registration, renewal of registration, application for an inspection certificate, and/or application for a driver's license. La. R.S. 32:861(A)(1) and (2); La. R.S. 32:862(C) and (D). See also Adams at p. 4, 729 So.2d at 1043; Simms at p. 2, 702 So.2d at 687. An owner may satisfy this requirement by obtaining an automobile liability policy with specified liability limits as defined by statute. La. R.S. 32:861(A)(1).
The statutory scheme provided by the Louisiana Motor Vehicle Safety Responsibility Law is intended to attach financial protection to the vehicle rather than to the operator. Marcus v. Hanover Ins. Co., 98-2040, p. 3 (La.6/4/99), 740 So.2d 603, 605; Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991). Accordingly, La. R.S. 32:900 provides that an owner's policy of liability insurance shall designate all covered vehicles and "shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle...."
*1219 In 1992, however, the legislature created an exception and provided that an insurer and an insured may agree in writing to exclude from coverage any named person who is a resident of the same household as the named insured. Specifically, this exception, found in La. R.S. 32:900(L), currently provides in pertinent part:
(1) Notwithstanding the provisions of Paragraph (B)(2) of this Section, an insurer and an insured may by written agreement exclude from coverage the named insured and the spouse of the named insured. The insurer and an insured may also exclude from coverage any other named person who is a resident of the same household as the named insured at the time that the written agreement is entered into, and the exclusion shall be effective, regardless of whether the excluded person continues to remain a resident of the same household subsequent to the execution of the written agreement. It shall not be necessary for the person being excluded from coverage to execute or be a party to the written agreement. For the purposes of this Subsection, the term "named insured" means the applicant for the policy of insurance issued by the insurer.
The sole purpose for the exclusion in La. R.S. 32:900(L) is premium reduction. Williams v. Watson, 01-0495, p. 7 (La.10/16/01), 798 So.2d 55, 59. As we recognized in Joseph v. Dickerson, 99-1046, p. 9 (La.1/19/00), 754 So.2d 912, 917, the purpose of the exclusion "is to allow the named insured the option of paying a reduced premium in exchange for insurance that affords no coverage while a covered vehicle is operated by the excluded driver."
The Motor Vehicle Safety Responsibility Law also provides various consequences for an owner's failure to comply with the state's compulsory automobile liability insurance law. See e.g. La. R.S. 32:863(A)(1) (providing for revocation of the vehicle's registration and cancellation or impoundment of the vehicle's license plate); La. R.S. 32:864 (providing criminal sanctions for false declarations); La. R.S. 32:865 (providing criminal sanctions for operating a motor vehicle not covered by security). One of these consequences is found in La. R.S. 32:866, popularly known as the "no pay, no play" law.[2] This law states, in pertinent part:
A. (1) There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security.
* * * *
B. Each person who is involved in an accident in which the other motor vehicle was not covered by compulsory motor vehicle liability security and who is found to be liable for damages to the owner or operator of the other motor vehicle may assert as an affirmative defense the limitation of recovery provisions of Subsection A of this Section.
* * * *
E. Nothing in this Section shall preclude a passenger in a vehicle from asserting *1220 a claim to recover damages for injury, death, or loss which he occasioned, in whole or in part, by the negligence of another person arising out of the operation or use of a motor vehicle. This Subsection shall not apply to a passenger who is also the owner of the uninsured motor vehicle involved in the accident.
Thus, an owner or operator of a motor vehicle that is involved in an accident who fails to own or maintain compulsory motor vehicle liability security is prohibited from recovering his or her first $10,000 of bodily injury and his or her first $10,000 of property damage based on any cause or right of action arising out of the motor vehicle accident.
This statute was enacted by Act No. 1476 of 1997, the Omnibus Premium Reduction Act of 1997. The title of the Act states that it is designed "to reduce otherwise recoverable damages for failure to maintain liability insurance coverage" and "to require the reduction in automobile liability insurance rates." Accordingly, in Section 1 of the Omnibus Premium Reduction Act of 1997, the legislature expressed two broad purposes of the Act: (1) "to achieve a significant reduction in the premium rate of motor vehicle insurance" and (2) "to encourage all persons who own or operate motor vehicles on the public streets and highways of this state to comply with the Motor Vehicle Safety Responsibility Law." Thus, the beneficiaries of Act 1476 are the insured citizens and the insurers of the state. Progressive Sec. Ins. Co. v. Foster, 97-2985, p. 10 (La.4/23/98), 711 So.2d 675, 682.
As detailed in the previous section, the narrow issue presented by these cases is whether the "no pay, no play" law applies to bar a portion of a named insured's recovery of her own bodily injury and/or property damages when an excluded driver is involved in an accident while driving the named insured's vehicle. The resolution of this issue requires a determination of the scope of La. R.S. 32:866 and a balancing of the competing policies underlying La. R.S. 32:866 and La. R.S. 32:900(L).
The courts of appeal that have considered this issue differ in their opinions as to its proper resolution. As explained above, the second circuit held in Marolyn Bryant's case that she was entitled to recover the total value of her vehicle with no deduction under the "no pay, no play" law because she "did in fact maintain an automobile insurance policy on the vehicle at the time of this accident." Bryant v. United Servs. Auto. Ass'n, 37,926, p. 3 (La.App. 2 Cir. 12/10/03), 862 So.2d 446, 447. In so holding, the second circuit explicitly agreed with the decision reached by the first circuit in A.K. Durnin Chrysler-Plymouth, Inc. v. Jones, 01-0810 (La.App. 1 Cir. 5/10/02), 818 So.2d 867. In A.K. Durnin, the first circuit held that La. R.S. 32:866 does not apply to bar an owner's recovery when she suffers property damage as a result of her vehicle being involved in an accident while being operated by an excluded driver. The first circuit reasoned that the insured is specifically allowed to exclude a spouse under the Louisiana Motor Vehicle Safety Responsibility Law. The first circuit found that the fact that the owner had specifically excluded her husband, who was operating her vehicle at the time of the accident, did not change the fact that she had obtained a liability policy in conformity with the compulsory motor vehicle liability security law.
In contrast to the first and second circuits, the fifth circuit in the Virginia McCray case held that the "no pay, no play" applies to partially bar an owner's recovery when the vehicle is involved in an accident while being driven by an excluded *1221 driver. The fifth circuit reasoned that Virginia McCray did not have liability coverage on her vehicle when it was being driven by Stacy McCray with her permission. In reaching this decision, the fifth circuit disagreed with the A.K. Durnin decision and, instead, followed the holding of the third circuit in Lantier v. State Farm Mut. Auto. Ins. Co., 02-0301 (La.App. 3 Cir. 10/2/02), 827 So.2d 597, writ denied, 02-2628 (La.12/13/02), 831 So.2d 991. In Lantier, the third circuit relied on policy considerations to hold that the provisions of La. R.S. 32:866 apply to partially bar the recovery of an owner in a situation similar to that of Virginia McCray. The third circuit, rejecting the holding of A.K. Durnin, stated that it could not "agree with an interpretation of the statute that allows a party to recover their damages when they have excluded a person from coverage on their policy and then allowed that person to operate the vehicle." Lantier, 02-0301 at p. 2, 827 So.2d at 598.
After thoroughly considering the positions of each party, the conflicting decisions of the courts of appeal, the relevant statutory provisions, and the underlying public policies of our state, we conclude that La. R.S. 32:866 applies to partially bar the recoveries of plaintiffs in the instant cases if the excluded drivers were operating plaintiffs' vehicles with their permission.
The "no pay, no play" law bars a portion of an owner's recovery "based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security." La. R.S. 32:866(A)(1). This court has previously construed the term "occasioned by" as it is used in Act 1476 to mean "suffered by." Progressive Sec. Ins. Co., 97-2985 at p. 14, 711 So.2d at 684. The term "owner" as used in this provision is statutorily defined as "[e]very person who holds the legal title to a motor vehicle...." La. R.S. 32:851(8). The term "operator," in turn, is statutorily defined as "[e]very person who is in actual physical control of a motor vehicle." La. R.S. 32:851(7). The parties do not contend that the excluded drivers, as operators of plaintiffs' vehicles, are entitled to recover the first $10,000 of their bodily injury and/or property damages. La. R.S. 32:866 clearly applies to partially bar any recovery sought by these operators who failed to own or maintain compulsory motor vehicle liability security. The question we must resolve, however, is whether plaintiffs, as the owners of motor vehicles involved in accidents, failed to "own or maintain" compulsory motor vehicle liability security when they suffered damages based on a cause of action arising out of a motor vehicle accident that occurred when their vehicles were being operated by drivers they had specifically excluded pursuant to La. R.S. 32:900(L).
Because the statute utilizes the disjunctive "or," an owner's recovery is partially barred under the terms of La. R.S. 32:866 unless he both owns and maintains the required liability security at the time the vehicle is involved in the accident. Plaintiffs clearly "owned" compulsory motor vehicle liability security when the excluded drivers were involved in the accidents. However, in order to determine whether they "maintained" the required security at the time of the accident, we must examine the policies owned by plaintiffs to determine the coverage afforded when a driver specifically excluded pursuant to La. R.S. 32:900(L) is operating the vehicle. An insurance policy is a contract that constitutes the law between the parties. Marcus, 98-2040 at p. 4, 740 *1222 So.2d at 606; Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La.1988).
The Bryant policy contains a "Designated Driver Exclusion Endorsement" that states:
In consideration of the premium charged for the policy to which this endorsement applies, it is hereby understood and agreed that any insurance afforded by this policy shall not apply or accrue with respect to any claim arising from accidents which occur when any vehicle described in the declarations of the policy or any other vehicle to which the terms of the policy are extended is being used or operated, either with or without permission, by the following excluded members of the insured's household: Justin Bryant son.

The endorsement was signed by Marolyn Bryant on June 15, 2002. Pursuant to the terms of the policy, then, any insurance coverage that would ordinarily apply to cover Marolyn Bryant's Ford Mustang vehicle did not "apply or accrue" when Justin was operating the vehicle. As explained above, the exclusion allowed by La. R.S. 32:900(L) represents an exception to the general policy decision to attach insurance protection to a vehicle rather than to an operator. Had Justin been at fault in causing the accident, Marolyn Bryant's insurance coverage would not have been available to an injured third party. Likewise, any property damage claim that Marolyn Bryant would have otherwise been able to make against her own coverage would not have been available had Justin been at fault in causing an accident while driving her vehicle. Because no insurance coverage was afforded by Marolyn Bryant's policy for any claim arising out of accidents that occurred when Justin was driving Marolyn Bryant's vehicle, we must conclude that she failed to maintain compulsory motor vehicle liability security at the time of the accident at issue.
Virginia McCray's policy was not introduced into the record. However, the parties stipulated that Stacy McCray was operating Virginia McCray's Chrysler Fifth Avenue vehicle with her permission at the time of the accident. The parties further stipulated that the McCray policy contained a written named driver exclusion, which was in full force and effect on the date of the accident, whereby any and all coverage provided by the policy excluded Stacy McCray's use or operation of the vehicle involved in the accident. The various stipulations regarding the named driver exclusion lead us to conclude that, like the Bryant policy, the McCray policy provided no coverage when Stacy McCray was operating Virginia's McCray's vehicle. We therefore find that Virginia McCray failed to maintain compulsory motor vehicle liability security when Stacy McCray was operating the vehicle involved in the accident at issue.
In the instant case, it is clear that Stacy McCray was operating Virginia McCray's vehicle with her permission. It is unclear from the record, however, whether Justin Bryant was operating Marolyn Bryant's vehicle with her permission. Consequently, in order to properly dispose of the cases before us, we must determine whether the granting of permission, or lack thereof, by a named insured to an excluded driver to operate a covered vehicle makes a difference in the applicability of La. R.S. 32:866 to a particular case.
As evidenced by Act 1476, the legislature enacted the "no pay, no play" law to reduce the premiums charged for motor vehicle insurance and to discourage the ownership and operation of uninsured motor vehicles. The legislature, however, also enacted a provision that allows a named insured to specifically exclude coverage *1223 when a named driver is operating an otherwise covered vehicle. The purpose of this law was to give the insured the option of paying a reduced premium in exchange for insurance that affords no coverage while a vehicle is being operated by the excluded driver. The policies underlying the two provisions thus conflict somewhat. We find they are best reconciled by limiting the application of La. R.S. 32:866 to situations in which a named insured has given permission to operate a covered vehicle to a driver validly excluded pursuant to La. R.S. 32:90(L), and then seeks to recover his or her own damages when the excluded driver is involved in an accident. While our law permits a named insured to exclude a driver from coverage under his or her policy, it clearly does not envision the named insured giving permission to an excluded driver to operate his or her vehicle. By applying the provisions of the "no pay, no play" law to a situation in which the named insured has given an excluded driver permission to operate his or her vehicle, owners are discouraged from allowing an excluded driver on the public highways and streets. While a named insured who has given permission to an excluded driver to operate his or her vehicle may not be liable to an injured third party under a theory of negligent entrustment, see Joseph v. Dickerson, 99-1046 (La.1/19/00), 754 So.2d 912, the provisions of the "no pay, no play" law apply to partially bar the named insured's own recovery in light of the fact that the named insured thwarted the law by receiving a reduced premium and then permitting his or her car to be operated by an excluded driver. It would serve no valid purpose, however, to apply the provisions of the "no pay, no play" law to a situation in which the excluded driver operated the vehicle without the permission of the named insured. In such a situation, the named insured has not thwarted the law by receiving a reduced premium in exchange for excluding a driver and then permitting that excluded driver to operate the vehicle in contravention of the Motor Vehicle Safety Responsibility Law. Additionally, it would be absurd to contend that a named insured should not be allowed to recover a portion of his or her damages pursuant to the provisions of La. R.S. 32:866 in a situation where the vehicle was stolen and then involved in an accident, perhaps an accident that was not caused by the fault of the thief. This view is supported by the provisions of La. R.S. 32:865, which impose criminal sanctions on an owner who allows the operation of a motor vehicle that is not covered by proper security.[3] The terms of *1224 the statute, however, do not apply when the vehicle is operated without the permission of the owner. Additionally, the legislative committee that considered the enactment of the bill that eventually added La. R.S. 32:900(L) specifically declined to amend La. R.S. 32:900(B)(2) to limit required coverage to validly licensed drivers because it was concerned about the situation in which a young child accidentally caused a vehicle to move and cause damage. See Minutes of Meeting, House Insurance Committee, May 13, 1992. In light of the policies served by La. R.S. 32:866, we find it would be absurd to apply the "no pay, no play" law to partially reduce an owner's recovery for damages arising out of the operation of his or her vehicle by an excluded driver who is involved in an accident when the owner did not give the excluded driver permission to operate the vehicle.
For the reasons explained above, we therefore hold that when an insurance policy affords no coverage for an excluded driver's operation of the named insured's vehicle, La. R.S. 32:866 applies to bar a specified portion of the named insured's recovery of bodily injury and/or property damages when the excluded driver is involved in an accident while driving the named insured's vehicle with the permission of the named insured. This holding comports with the legislative policy to discourage vehicles without proper security from operating on our public highways, roads and streets, and to benefit the insured citizens and insurers of the state.
The record is unclear as to whether Justin Bryant had permission to operate Marolyn Bryant's vehicle at the time of the accident. Therefore, there remains a genuine issue of material fact such that the summary judgment granted in favor of plaintiff by the district court and affirmed by the court of appeal must be reversed. The case will be remanded to the district court for it to conduct further proceedings consistent with this opinion.
In Virginia McCray's case, the parties stipulated that plaintiff had given permission *1225 for the excluded driver to operate her vehicle at the time of the accident. Unlike Marolyn Bryant, Virginia McCray was a passenger in the vehicle at the time of the accident. Subsection (E) of La. R.S. 32:866 addresses the claims of passengers and provides:
Nothing in this Section shall preclude a passenger in a vehicle from asserting a claim to recover damages for injury, death, or loss which he occasioned, in whole or in part, by the negligence of another person arising out of the operation or use of a motor vehicle. This Subsection shall not apply to a passenger who is also the owner of the uninsured motor vehicle involved in the accident.
Because Virginia McCray failed to maintain compulsory motor vehicle liability security when she allowed Stacy McCray to operate her vehicle, the vehicle was in effect uninsured under the terms of her policy at the time of the accident. Subsection (E) therefore affords her no relief from the application of the "no pay, no play" law. We find, therefore, that the court of appeal was correct in its conclusion that the provisions of La. R.S. 32:866 apply to bar a portion of her recovery. Additionally, we find no error in the court of appeal's conclusion that La. R.S. 32:866(A)(1) bars Virginia McCray from recovering the first $10,000 of her bodily injury claim and the first $10,000 of her property damage claim. Accordingly, we affirm the court of appeal judgment reducing her award from $14,890.65 to $2,878.10. Because Allstate did not file a writ application, we will not address its contention, made in brief, that the court of appeal erred in awarding Virginia McCray lost wages in the amount of $728.00 and in finding that "[l]ost wages are not part of an award for property damage." This determination by the appellate court is now final. See e.g. State ex rel. J.M., 02-2089 (La.1/28/03), 837 So.2d 1247; Doerr v. Mobil Oil Corp., 00-0947 (La.3/16/01), 782 So.2d 573 (on rehearing); Williams v. City of Baton Rouge, 98-1981 (La.4/13/99), 731 So.2d 240.

Decree
For the foregoing reasons, we reverse the judgments of the lower courts granting summary judgment in favor of plaintiff, Marolyn Bryant. The Bryant case is remanded to the district court with instructions for it to conduct further proceedings consistent with this opinion. The judgment of the court of appeal in the McCray case is affirmed.
03-C-3491: Reversed and Remanded.
04-C-0028: Affirmed.
NOTES
[1] La. C.C.P. art. 1915(B)(1) provides:

B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
[2] This law is so named because it provides that "if a motorist fails to pay for liability coverage to protect others, he cannot `play' in the legal system, at least to the collection of his first $10,000 damages." Progressive Sec. Ins. Co. v. Foster, 97-2985, p. 3 (La.4/23/98), 711 So.2d 675, 679.
[3] La. R.S. 32:865 provides:

A. Any person knowingly operating a motor vehicle and any owner allowing a motor vehicle to be operated, when such motor vehicle is not covered by the security required under R.S. 32:861 shall, upon conviction, be fined not more than five hundred dollars.
B. (1) If the vehicle is in any manner involved in an accident within this state, when such motor vehicle is not covered by the security required under R.S. 32:861, the owner thereof shall, upon conviction, be fined not more than five hundred dollars, shall have the registration of the vehicle revoked for a period of sixty days, and shall have his driving privileges suspended for a period of sixty days.
(2) Notwithstanding Paragraph (1) of this Subsection and except as provided in Paragraph (3) of this Subsection, any person operating a motor vehicle when that person knows the vehicle is not covered by the security required under R.S. 32:861, and any owner allowing a motor vehicle to be operated which is in any way involved in an accident within this state in which any person is killed or injured or in which damage to the property of any one person in excess of five hundred dollars is sustained, when such motor vehicle is not covered by the security required under R.S. 32:861, the owner thereof knows or has been notified by the department of the absence of the required security, and at least thirty days has elapsed after such knowledge has been acquired or notification received by the owner, shall, upon conviction, be fined not less than one thousand dollars, nor more than ten thousand dollars, shall have the registration of his vehicle revoked for a period of twelve months, shall have his driving privileges suspended for a period of twelve months, and shall be required to perform not less than forty hours nor more than two hundred hours of community service. After deposit in the Bond Security and Redemption Fund, an amount equal to all fines collected under the provisions of this Paragraph shall be credited to the Crime Victims Reparations Fund, R.S. 46:1816.
(3) The criminal sanction provisions of Paragraph (2) of this Subsection, shall not apply:
(a) To the operator or the owner of a motor vehicle involved in an accident wherein no injury or damage was caused to the person or property of any one other than such operator or owner or the immediate family members of such operator or owner.
(b) To the owner of a motor vehicle if at the time of the accident the vehicle was being operated without his permission, express or implied, or was parked by a person who had been operating such motor vehicle without such permission.
(c) To the operator or the owner of a motor vehicle involved in a collision with another vehicle, in which the operator of the other vehicle is found guilty of or pleads guilty to a charge of operating a vehicle while intoxicated, negligent injuring, vehicular negligent injuring, vehicular homicide, or negligent homicide.
(4) Any such owner or operator described in Paragraph (1) or (2) of this Subsection shall be able to use the procedures described in R.S. 32:415.1 to obtain a temporary driver's license, registration, and plate, upon showing undue economic or personal hardship that would result from the suspension of his driving privileges.