Dear Messrs. Ducrest and Wagner:
This opinion is in response to your Request of December 19, 2008, regarding reporting requirements applicable to pawnbrokers and secondhand dealers.
FACTS
Section 17-11 of the Code of Ordinances of the City of Alexandria requires that all pawnbrokers and secondhand dealers in the city keep at their place of business a bound book in which are entered ". . . a daily description of the articles purchased or pledged, the name of the sellers or borrowers, and the amounts of the purchase price or amount loaned thereon as the case may be."
On July 29, 2008, the City of Alexandria passed Ordinance No. 252-2008, Code of Ordinances Sec. 17.11(e), which requires that pawnbrokers and secondhand dealers shall also file the above-described daily records ". . . electronically to a law enforcement web site designated as an agent of the police department for the sole purpose of collecting such records or in such other form as may be permitted by the chief of police."
On August 4, 2008, in accordance with said ordinance, the Chief of Police of the City of Alexandria sent a written notice to the pawnbrokers and secondhand dealers doing business in the city, requiring that they register with a web site known as *Page 2 LeadsOnLine before September 1, 2008, and thereafter comply with the ordinance by filing all daily transactions on theLeadsOnLine web site. According to the letter,LeadsOnLine is a web-based, secure electronic data transfer service designed to facilitate the recovery of missing personal property.
Because of questions by certain pawnbrokers and secondhand dealers doing business in Alexandria, your office has requested a legal opinion addressing those issues specified below.
On January 6, 2009, Charles F. Wagner, Jr., Sheriff of Rapides Parish, requested an opinion as to whether or not the Sheriff can require that area pawnbrokers report transactional information in electronic form to LeadsOnLine. Sheriff Wagner's request has been incorporated into this opinion.
REQUEST
1. Is the state law governing pawnbrokers and secondhand dealers preemptive, thus rendering Ordinance No. 252-2008 ineffectual or unenforceable?
2. Does La.R.S. 37:1798(A) permit the pawnbroker/secondhand dealer to furnish the referenced information to either of the named law enforcement officials without regard to whether the business is located within the corporate limits of a municipality or in an unincorporated area of the parish?
3. Is a pawnbroker or secondhand dealer located in the City of Alexandria required to submit information to LeadsOnLine?
LAW AND ANALYSIS 1. Is the state law governing pawnbrokers and secondhanddealers preemptive, thus rendering OrdinanceNo. 252-2008 ineffectual or unenforceable?
The Office of Financial Institutions and its chief officer, the Commissioner of Financial Institutions, were created by La.R.S. 6:101. The supervisory and regulatory authority of the Office and of the Commissioner, and, incidentally, the lawmaking authority of the legislature with regard to the entities so supervised and regulated, are granted by La.R.S. 6:101(A), which states as follows:
 A. There is hereby created the Office of Financial Institutions as a state agency, within the office of the governor. It shall have supervisory and regulatory jurisdiction over all financial institutions and other persons as *Page 3 
provided by this Title, and such other jurisdiction as is conferred on the office or commissioner in other legislation. The commissioner of the Office of Financial Institutions shall have exclusive supervisory and regulatory jurisdiction and authority over Louisiana state-chartered financial institutions and other financial entities regulated by the Office of Financial Institutions, and the state legislature shall have exclusive lawmaking authority, except for rulemaking authority, regarding the supervision and regulation of the same. [Emphasis supplied].
The "other financial entities regulated by the Office of Financial Institutions" in La.R.S. 6:101 include pawnshops and secondhand dealers, all of which are regulated by the Commissioner under the "Louisiana Pawnshop Act," La.R.S. 37:1781, et seq., and under the secondhand dealer statutes, La.R.S. 37:1861, et seq., hereinafter "the Acts." Therefore, the commissioner has "exclusive supervisory and regulatory jurisdiction and authority over" pawnshops and second hand dealers in Louisiana.
The Acts regulating these businesses are comprehensive, detailed, and specific in providing for all aspects of the licensing, operating, and reporting requirements for all pawnshops and secondhand dealers in Louisiana. As examples, the Louisiana Pawnshop Act provides detailed requirements for licensing, hours and days of operation, maximum rate of interest, form and substance of pawn tickets, presumptions as to possession of pawn tickets and procedures relating to lost or stolen tickets, records to be kept and inspection of same, reporting requirements, service charges, and penalties for violations. The secondhand-dealer statutes provide similar comprehensive and detailed requirements for secondhand dealers, including business location, licenses, detailed records of secondhand goods or objects purchased, photographic and other records, reporting requirements, including daily reports to law-enforcement officers, hours of business, and penalties for violations.
The determination of whether or not a comprehensive set of state statutes or regulations has preempted a field of endeavor is made according to jurisdictional rules embodied in the following cases:
In Palermo Land Co., Inc. Browning Ferris,Inc. v. Planning Commission of Calcasieu Parish The Police Jury ofCalcasieu Parish et al., 561 So.2d 482 (La. 1990), the Supreme Court reiterated the established criteria for determining the existence of pre-emption of local police powers, stating:
 Local power is not pre-empted unless it was the clear and manifest purpose of the legislature to do so, or the exercise of dual authority is repugnant to a legislative objective; if there is not express provision *Page 4 
mandating pre-emption, the courts will determine the legislative intent by examining the pervasiveness of the state regulatory scheme, the need for state uniformity, and the danger of conflict between the enforcement of local laws and the administration of the state program.
In Rollins Environmental Services of Louisiana,Inc. v. Iberville Parish Police Jury, 371 So.2d 1127 (La. 1979), the Supreme Court considered a local hazardous waste ordinance, which sought to regulate the same types of hazardous waste which were regulated by the State. The court, in both the majority opinion and in Justice Tate's concurring opinion, found that the State had preempted the field, primarily because La.R.S. 30:1101-1116, had granted to the Department of Natural Resources "exclusive jurisdiction for the development, implementation, and enforcement of a comprehensive state hazardous waste program". Also, La.R.S. 40:5 had granted state agencies the "exclusive jurisdiction, control and authority . . . over the handling, storage and disposal of waste materials, including solids and liquid residues." The granting by the Legislature to the Department of Natural Resources and to state agencies of such exclusive jurisdiction over hazardous waste, had invalidated the local ordinance addressing the same subject matter.
In Desormeaux Enterprises, Inc. v. Village of Mermentau,568 So.2d 213 (La. App. 3 Cir. 1990), the court, citing both Rollins and Palermo, ruled that the Village of Mermentau was preempted by state law from passing an ordinance prohibiting the siting of a saltwater disposal facility on municipal property, and that state law regulating such facilities was pervasive. The court's holding was based on two primary factors: First, La.R.S. 30.1 stated that ". . . the regulation of all surface and storage waste facilities incidental to oil and gas exploration and production shall be within the jurisdiction of the department." The court stated that the word "shall" is mandatory and that the statute granted to the Department of Conservation preemptive authority to regulate such waste storage facilities. Second, acting under authority of La.R.S. 30:41, which specified criteria for the location, design and operation of commercial offsite storage facilities, the Commissioner had adopted a comprehensive set of regulations establishing the criteria to be met in order to obtain a disposal well permit. The court found that the statutes and resulting regulations were pervasive, and that the local ordinance was null and void.
In accord with the above rulings are Opinion Nos. 88-647, 90-262, 92-148, 93-773, 94-85, 99-18, and 99-18A.
The present situation is analogous to that of Desormeaux.
First, by La.R.S. 6:101(A), quoted above, the Commissioner of Financial Institutions has been granted "exclusive supervisory and regulatory jurisdiction and authority over" Louisiana pawnbrokers and secondhand dealers. This grant of authority is even more strongly-worded *Page 5 
than the legislative grant in Desormeaux, and leaves no doubt that the Commissioner, and no other entity, shall supervise and regulate such businesses. Second, La.R.S. 37:1781, et seq. governing pawnbrokers and La.R.S. 37:1861, et seq., governing secondhand dealers, are comprehensive, detailed, and specific in providing for all aspects of the licensing, operating, and reporting requirements for such businesses. These pervasive statutes, to the same degree as the comprehensive regulations in Desormeaux, show a clear intent by the Legislature to have all pawnshops and secondhand dealers supervised and regulated by the State under State statutes and regulations, to the exclusion of local government.
In accordance with the rules stated in Palermo, Rollins, andDesormeaux, the Legislature has stated its clear and manifest purpose to preempt local power regarding pawnbrokers and secondhand dealers; and, although it is unnecessary to look further, it should be noted that the applicable statutes, are, in fact, pervasive, leaving no necessity for further regulation by local government.
Based upon the above authorities, it is the opinion ofthe Attorney General that La.R.S. 37:1781, et seq. andLa.R.S. 37:1861, et seq., are preemptive, and that the City ofAlexandria Ordinance No. 252-2008, Code of Ordinances Sec. 17.11(e),is null and void.
 2. Does La.R.S. 37:1798(A) permit the pawnbroker/secondhanddealer to furnish the information to either of thenamed law enforcement officials without regard to whether thebusiness is located within the corporate limits of a municipality orin an unincorporated area of the parish?
The requirement for pawnbrokers to report transactional information on a daily basis is contained in La.R.S. 37:1798(A)(1) which reads, in pertinent part,
 A. (1) Every pawnbroker shall provide all transactional information obtained pursuant to R.S. 37:1796 to the chief of police of the city or town in which he is doing business or to the sheriff of the parish in which he is doing business, on a daily basis by the end of the next business day or on such less frequent basis as is required by the chief of police or sheriff . . .
Similarly, La.R.S. 37:1866 requires secondhand dealers to ". . . make out and deliver to the superintendent of police of the city or town or to the sheriff of the parish in which he is doing business . . ." a legible and correct copy of the previous day's transactions required by La.R.S. 37:1864. *Page 6 
With regard to interpretation of statutes, La. R.S 1:4 states that, "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." When the wording of a statute is clear and unambiguous and its application does not lead to absurd consequences, its letter cannot be disregarded in search of the intent of the legislature. The law must be applied as written, without further interpretation. Taggert v. Our Lady Queen ofHeaven Catholic Church, 2004-1331 (La.App. 3 Cir. 2/2/05), 893 So.2d 1001, writ denied 2005-0569 (La. 4/29/05), 901 So.2d 1072; A.K. DurninChrysler-Plymouth, Inc. v. Jones, 2001-0810 (La.App. 1 Cir. 5/10/02), 818 So.2d 867.
The above statutes, in clear and unambiguous language, require each pawnbroker or secondhand dealer doing business within the corporate limits of a town or city to report transactions to the chief or superintendent of police or to the sheriff of the parish in which he is doing business. A pawnbroker or secondhand dealer doing business outside the corporate limits of a town or city can, logically, report transactions only to the sheriff of that parish, because there is no chief of police with jurisdiction over the unincorporated area.
It is the opinion of the Attorney General that a pawnbroker orsecondhand dealer doing business within a town or city can furnishthe required transactional information to either the chief of policeor to the sheriff, whichever the pawnbroker or secondhand dealerchooses, or both. A pawnbroker or secondhand dealer doing businessin an unincorporated area of a parish must furnish the transactionalinformation to the sheriff of that parish.
 3. Can a pawnbroker/secondhand dealer doing business within thecorporate limits of the City of Alexandria be required to submitrequired transactional information to LeadsOnLine?
Although a license issued under La.R.S. 37:1785(A) allows a pawnbroker to also act as a new and secondhand dealer, the record-keeping and reporting requirements are different for pawnbrokers and for secondhand dealers; therefore, it is necessary to consider the various recordkeeping and reporting requirements in the following sections:
A. Pawnshops — Recordkeeping and Reporting Requirements
Under La.R.S. 37:1796, a pawnbroker is required to maintain for two years a permanent, confidential record of all transactions of things pledged. The information must include "personally-identifiable information" and "transactional information" as defined in La.R.S. 37:1782(14) and (16), which read as follows: *Page 7 
 (14) "Personally-identifiable information" with respect to each pawn transaction shall consist of the following:
 (a) The pledgor's name and address.
 (b) The pledgor's sex, race, and approximate height.
 (c) The pledgor's date of birth.
 (d) The distinctive number from the pledgor's Louisiana driver's license, driver's license from another state, international driver's license, passport, or identification by a government agency or the United States Postal Service.
 (16) "Transactional information" with respect to each pawn transaction shall consist of the following:
 (a) A clear and accurate description of the pledged things, including model and serial numbers if indicated on things.
 (b) The date of the original pawn transaction.
 (c) The maturity date of the original pawn transaction.
 (d) The date and amount of each payment made on a pawn transaction, including any extensions made.
The requirement that the pawnbrokers' records are to be open for inspection by the Commissioner and by the appropriate law enforcement officer is contained in La.R.S. 37:1797.
Information which a pawnbroker must furnish to the chief of police or the sheriff, together with the permissible means of reporting and the types of information which must be reported, are specified in La.R.S. 37:1798, as follows:
 A. (1) Every pawnbroker shall provide all transactional information obtained pursuant to R.S. 37:1796 to the chief of police of the city or town in which he is doing business or to the sheriff of the parish in which he is doing business, on a daily basis by the end of the next business day or on such less frequent basis as is required by the chief of police or sheriff. The means for providing the transactional information required under this *Page 8 
 Section shall be selected by the chief of police or sheriff and shall be one of the following:
 (a) By electronic transmission if the pawnbroker has the means available to make transmissions in electronic form.
 (b) By placing in the United States mail.
 (c) By sending a facsimile.
 (2) In the event transactional information is transmitted electronically pursuant to Subparagraph (A)(1)(a) of this Section, the appropriate law enforcement official may, for purposes of an investigation of a crime relating to a particular pawn transaction, request the pawnbroker to mail or fax such official the personally-identifiable information relating to such transaction under investigation. The pawnbroker shall deliver the personally-identifiable information relating to the identified transaction to the appropriate law enforcement official within twenty-four hours of the request. In the event the pawnbroker transfers information in printed form pursuant to Subparagraph (A)(1)(b) or (c) of this Section, the pawnbroker shall not also be required to transmit such information in electronic form pursuant to Subparagraph (A)(1)(a) of this Section.
 B. The pawnbroker shall have the responsibility of tendering the information provided for in Subsection A of this Section regardless of its use or nonuse by the chief of police in the city or town in which he is doing business or, alternatively, to the sheriff of the parish in which he is doing business. The tender of this information is a courtesy mandated by state law and which provides a benefit to the general public. The chief of police or sheriff shall not be mandated to take any particular action concerning the information tendered.
B. Federal Nondisclosure Requirements
It should be noted that the federal law known as the Graham-Leach-Bliley Act (GLBA), 15 U.S.C.A. § 6801, et seq., places restrictions on disclosure of nonpublic personal information by financial institutions, which appear to include pawnshops. Under these statutes and implementing regulations, "nonpublic personal information" is defined to be "personally-identifiable financial information" which includes information by which the identity of a consumer may be ascertained. Information which does not identify a consumer is not "nonpublic personal information" and is not covered by the *Page 9 
GLBA. The transactional information which a pawnbroker must report to the chief of police or to the sheriff, does not contain any information which would identify a specific pledgor, and does not violate the GLBA.
The "personally-identifiable information" as defined in La.R.S. 37:1782 is the same kind of information covered by the GLBA; however, the GLBA, at 15 U.S.C.A. § 6802(e)(5) allows disclosure of such personally-identifiable information for ". . . an investigation on a matter related to public safety," and 15 U.S.C.A. § 6802(e)(8) allows disclosure ". . . to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law."
Thus, the reporting of transactional information in electronic or other form to law enforcement agencies would comply with the GLBA; and, the reporting of personally-identifiable information in connection with a civil, criminal, or regulatory investigation, or to comply with the requirements of state regulatory authorities regarding examination, compliance or other purposes, would also comply with the GLBA.
C. Secondhand Dealers — Recordkeeping and ReportingRequirements
The laws governing the licensing, reporting requirements, and conduct of secondhand dealers are contained in La.R.S. 37:1861, et seq. ("Secondhand Dealers Act"). The specific transactional reporting requirements for secondhand dealers are found at La.R.S. 37:1864, as follows:
 A. Every secondhand dealer as defined in this Part shall be required to maintain a book or ledger setting forth each purchase of secondhand or used merchandise when the value of any single piece of merchandise or article received, or any single lot of used building components, shall be twenty-five dollars or more for each single transaction. The price at which a piece of merchandise is offered for sale by a secondhand dealer shall be considered prima facie evidence of the value of the piece of merchandise. Each ledger entry shall be entered at the time of each transaction and shall contain an accurate description in the English language of the merchandise or article received including serial numbers of said objects, if distinguishable, along with the amount paid therefor. *Page 10 
 B. The name, address, sex, race, height, weight, and driver's license number of the person or persons selling or delivering said merchandise or articles to the dealer shall be obtained and included with each ledger entry. Records of each purchase shall be preserved for a period of at least three years.
In addition, La.R.S. 37:1864.1 requires the secondhand dealer to obtain either a photograph, a thumbprint, or driver's license number of the person selling or delivering merchandise to the dealer, with that information to be cross-referenced to the ledger entry.
The provisions of La.R.S. 37:1864 require that the required ledger book be open for inspection by law enforcement officers of the State Police, superintendent of police or sheriff of the parish or anyone designated by them of the city, town, or parish in which the dealer does business.
The reporting requirements for secondhand dealers are stated in La.R.S. 37:1866, as follows:
 Every person, licensed under the provisions of this Part shall make out and deliver to the superintendent of police of the city or town or to the sheriff of the parish in which he is doing business, every day before the hour of twelve o'clock noon, a legible and correct copy of the entries in the book mentioned in R.S. 37:1864 during the previous day. The name given by the person making a sale shall be furnished the superintendent of police or sheriff when they specially request it.
D. Analysis
A pawnbroker is required, under La.R.S. 37:1796, to collect and maintain both personally-identifiable information and transactional information regarding the pledge transaction, but, under La.R.S. 37:1798, he is to report only the transactional information to the chief of police or the sheriff.
The methods of reporting a pawn transaction are specified in La.R.S. 37:1798(A)(1); reporting must be done on a daily basis unless the chief of police or the sheriff specifies a less-frequent basis. The means of providing the transactional information is chosen by the authority to whom the report is made, and, under Section (A)(1) shall include one of these: (a) by electronic transmission, if the pawnbroker has the means available to make electronic transmissions; (b) by United States Mail; or, (c) by sending a facsimile. Although Section A(1) of the statute seems to require that only *Page 11 
one of these means be chosen by the sheriff or chief of police, Section A(2) states that, if the pawnbroker has sent the transactional information by either U.S. Mail or by facsimile transmission, then he cannot be required to report the same information by electronic means.
The conclusion is that, if a pawnbroker is capable of sending transactional information electronically, then he must do so, and it follows that the entity receiving the electronic transmission, whether it be the sheriff or the chief of police, can designate the form the electronic transmission will take. On the other hand, a pawnbroker who does not have the means to transmit the information electronically, may still mail or fax the information to the receiving authority.
The sheriff or chief of police being allowed to choose the means or method of the electronic reporting, such receiving authority is not prevented from designating LeadsOnLine as the electronic reporting method which the pawnbroker must use. Both the Sheriff of Rapides Parish and the Alexandria Chief of Police have chosenLeadsOnLine as the means of electronic reporting. It is important to note that La.R.S. 37:1798 allows only transactional information, and not personally-identifiable information, to be reported to LeadsOnLine or to another electronic database specified by the receiving authority. Pawnbrokers who must mail or fax the required information because of their inability to report electronically, obviously cannot be required to report electronically to LeadsOnLine or other electronic databases.
Secondhand dealers are not subject to the same reporting requirements or means as pawnbrokers. They are required by La.R.S. 37:1866 to "deliver to the . . . police . . . or to the sheriff . . . every day before the hour of twelve o'clock noon, a legible and correct copy of the entries in the book mentioned in R.S. 37:1864 during the previous day." Unlike the pawnbroker reporting requirements, there is no mention of the means to be used for the delivery, and there is no requirement that the information be reported electronically. Delivery could be, for example, by hand-delivery to the receiving authority, by the authority picking up the copies from the secondhand dealer's place of business, by overnight service, or other means designed to comply with the twenty-four-hour rule. Since no specific method of delivery is required, the secondhand dealer can choose the method.
Another important difference is that the information delivered by the secondhand dealer will necessarily include both transactional information and personally-identifiable information (La.R.S. 37:1864, 1864.1); and, the delivery of such personally-identifiable information to LeadsOnLine or other database which can be perused by any law-enforcement agency, would be a violation of both the state law and the federal privacy laws discussed above (15 U.S.C.A. § 6801, et seq.). *Page 12 
It should be pointed out that, although a secondhand dealer, or a pawnbroker without the ability to report electronically, cannot make the necessary reports to LeadsOnLine or a similar database, there is nothing to prevent the receiving authority, whether the sheriff or the police chief, from extracting transactional information from the delivered report and entering the transactional information into the LeadsOnLine or other database, so long as no personally-identifiable information is entered.
It is the opinion of the Attorney General that a pawnbroker,doing business within the corporate limits of the City ofAlexandria, and who has the ability to report electronically, can berequired to submit required transactional reports toLeadsOnLine. A pawnbroker without the ability to reportelectronically, or a secondhand dealer, cannot be required to submitrequired transactional reports to LeadsOnLine.
CONCLUSION
1. State law regulating pawnshops and secondhand dealers is pre-emptive, and the Alexandria City Ordinance No. 252-2008, Code of Ordinances Sec. 17.11(e), is invalid.
2. State law permits a pawnbroker or secondhand dealer located in a city or town the choice of reporting to either the police chief of that city or town, or to the sheriff of that parish or both. A pawnbroker or secondhand dealer located outside of a city or town must report to the sheriff of that parish.
3. A pawnbroker in Alexandria, Louisiana, who has the ability to report electronically, can be required to submit the required transactional reports to LeadsOnLine; however, a pawnbroker without the ability to report electronically, or a secondhand dealer, cannot be required to submit the required transactional reports to LeadsOnLine. *Page 13 
We trust that this opinion has adequately responded to your requests. If you have any questions regarding this opinion or if we may be of further service, please do not hesitate to contact this office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 BY: __________________________ David A. Peterson Assistant Attorney General
 JDC:TFH:DAP; jv