Dear Chief Farrington:
This Office is in receipt of your request for an Attorney General's Opinion on the following issue:
The Town of Haughton has accepted the streets of a local subdivision into the town limits and the town has taken over the maintenance of these streets. The subdivision (a gated community) has installed gates at the entrance to the subdivision and is closing the gates at approximately 8:00 p.m. in the evening allowing access only to the subdivision by entering a pass code through the electronic system.
The Town of Haughton Police Department is concerned with the liability issues of blocking the access to public streets that have been taken over by the Town of Haughton and are being maintained by the Town of Haughton.
The crux of your question is whether public roads can be gated so that only the property owners along those roads can access the roads after a certain time of day. The answer to this question is provided, in large part, by La. Atty. Gen. Op. No. 03-0321. For sake of brevity, the analysis of that opinion is revisited and updated herein.
Things are divided into common, public, and private. La.C.C. Art. 448. Common things may not be owned by anyone. La.C.C. Art. 449. They are such as the air and the high seas which may be freely used by everyone conformably with the use for which nature has intended them. Id. Public things are owned by the State or its political subdivisions in their capacity as public persons. La.C.C. Art. 450. Public things that belong to the State are such as running waters and the seashore. Id. Public things that may belong to political subdivisions of the State are such as streets and public squares. Id. Public things and common *Page 2 
things are subject to public use in accordance with applicable laws and regulations. La.C.C. Art. 452.
A road may be either public or private. La.C.C. Art. 457. A public road is one that is subject to public use. Id. The public may own the land on which the road is built or merely have the right to use it. Id. A private road is one that is not subject to public use. Id. If the road is public, then it is subject to public use. Id.; Vernon Parish Police Juryv. Buckley, 00-00045 (La. App. 3 Cir. 11/2/00), 776 So.2d 178. The land upon which a road lies also may either be publicly or privately owned. La.C.C. Art. 457. If it is privately owned, then it is a private thing subject to the public use in accordance with law or by dedication. La.C.C. Art. 455. The streets that belong to political subdivisions of the State are owned for the benefit of the public. A political subdivision owns a street subject to public use in its capacity as a public person. Walker v. Coleman, 540 So.2d 983 (La.App. 2 Cir. 1989).
According to the Louisiana Supreme Court, it is a violation of good faith to the public, and to those who acquired property in reference to a plan of a city with a view to the enjoyment of the use thus publicly granted, to afterwards appropriate a street to private uses. City ofBaton Rouge v. T. J. Bird, Sheriff, et al, 21 La. Ann. 255 (La. 1869).See also De Armas, et al v. Mayor, etc. of New Orleans, 5 La. 132 (La. 1833), dismissed for lack of jurisdiction 34 U.S. 9(Pet.)(1835). A municipal corporation has no authority to extinguish the public use of public property or divest such property of its public character. PoliceJury of the Parish of Plaquemines v. Foulhouze, et al., 30 La. Ann. 64
(La. 1878). A publicly owned street becomes public property belonging to all in common. Town of Napoleonville v. Boudreaux, 142 So. 874 (La. App. 1 Cir. 1932).
In La. Atty. Gen. Op. No. 01-0229, this office determined that the City of Lake Charles could not legally accept a dedication to the public of a gated street which the owners desired to dedicate to the public so as to obtain public maintenance yet requiring the street to remain gated, stating:
[W]e are of the opinion that the subdivision residents would have no legal right to obstruct a public road, be it by means of a controlled access gate or otherwise, as the property would be publicly held, affording Prien Oaks residents no right to prevent ingress or egress. A public road is a way open to all the people, without distinction, for passage and repassage at their pleasure. Galloway v. Wyatt Metal Boiler Works, 189 La. 837, 181 So. 187 (La. 1938). (See also La. Atty. Gen. Op. No. 99-345, 1999 WL 1211256 (La.A.G.)) By distinction, private roads are those which are only open for the benefit of certain individuals, to go from and to their homes, for the service of their lands, and for the use of some estate exclusively. Id. *Page 3 
Under the alternative scenario of dedicating only a servitude of public use, like results occur. The public is entitled to full, unhindered and unobstructed use of a servitude of public passage. Melancon v. Giglio, 96-2507 (La.App. 1 Cir. 3/13/98), 712 So.2d 535 citing Wright v. Dep't. of Highways, 342 So.2d 230, 232 (La.App. 1st Cir. 1976), writ denied 343 So.2d 1075 (La. 1977). A controlled access gate such as that which is presently in place, if opened and closed by the residents at their leisure, would constitute an obstruction and hindrance to the use and enjoyment of the roadway by the general public.
In summary . . . [w]ith regard to dedication of the private drive to the City of Lake Charles, we find that no matter the extent of the dedication, any obstruction such as the gate now in place would be impermissible. This finding aside, any transaction that purports to make a private drive/road public yet retains in the residents the power to control ingress and egress, no matter how limited, could appear to the objective observer as constituting an attempt to indirectly circumvent the prohibitions contained in Article VII, Section 14 for the nature of the drive would remain private.
As La. Atty. Gen. Op. No. 01-0229 makes clear, and despite the recent change in the La.Const. Art. VII, § 14(A) analysis due to the Cabela's
case (see discussion below), the State and its political subdivisions are barred from expending public funds on private interests without a reciprocal obligation. Due to the fact that the Town of Haughton has now taken over maintenance of the roads within the subdivision, those roads are now dedicated to public use. Thus, due to the now-public nature of the roads in the subject subdivision the private citizens of the subdivision do not have a legal right to obstruct the public road at any time.
All questions concerning the use of public funds must be examined in light of La.Const. Art. VII, § 14, which provides, in pertinent part, as follows:
Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .
In Board of Directors of the Industrial Development Board of the City ofGonzales, Louisiana, Inc. v. All Taxpayers, Property Owners, Citizens ofthe City of Gonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11 (the"Cabela's" case), the Louisiana Supreme Court abandoned its prior analysis in City of Port Allen. v. Louisiana Mun. Risk Mgmt. Agency,Inc., 439 So.2d 399 (La. 1983), and *Page 4 
articulated a new standard of review governing La.Const. Art. VII, § 14(A), stating that La.Const. Art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's,938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, § 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. TheCabela's standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds.
The Cabela's case and La.Const. art. VII, § 14(A) analysis are necessary in this situation because of your statement that "[T]he Town of Haughton has accepted the streets of a local subdivision into the town limits and the town has taken over the maintenance of these streets." The Town of Haughton's maintenance of the roads of this subdivision implies that the roads are now public. As such, in accordance with the Cabela's
standard, there must be some sort of reciprocal obligation by the subdivision to the Town of Haughton in order for Haughton to continue to maintain the road. Such a reciprocal obligation, as has been noted in the past opinions of this Office is the public's unrestricted use of such roads.
We also call your attention to La.R.S. 48:512 which provides, in pertinent part:
A. No person shall close, obstruct, or change any legal road, public road, or street, as defined in R.S. 48:491 and being a parish or municipal road, except upon order of the governing authority of the parish for a parish road, whether or not within a municipality, or upon order of the governing authority of the municipality for a municipal road, except as hereinafter provided.
B. If any public road or street is closed, obstructed, or changed in violation of the provisions of this Section, the governing authority of the parish or the governing authority of the municipality shall summarily open the road, remove all obstructions therefrom, and restore it to its former condition, at the expense of the person who closed, obstructed, or changed the public road or street . . .
Thus, should the citizens of the subdivision at issue herein continue to restrict the public's access to the public roads of the subdivision, then, pursuant to La.R.S. 48:512, the Haughton Police Department would be authorized to remove the *Page 5 
obstruction and charge the citizens of the subdivision for the Haughton Police Department's cost to have the obstruction removed.
Last, we also draw your attention to La.R.S. 14:96 which defines the crime of aggravated obstruction of a highway of commerce as "the intentional or criminally negligent placing of anything, or performance of any act, on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, wherein it is foreseeable that human life might be endangered." In addition, La.R.S. 14:97 defines the crime of simple obstruction of a highway of commerce as "the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult." In large part, these laws are in place to ensure that the emergency services of the EMS, police department, and fire department, are not hindered in cases of emergency. It is not hard to image any number of disastrous situations where a closed gate could impede these emergency services and place citizens in great danger.
In sum, there are numerous constitutional, statutory, and jurisprudential restrictions on the State maintaining a private road. Additionally, there are numerous constitutional, statutory, and jurisprudential restrictions on private citizens restricting access to a public road. It is our opinion that the subdivision does not have the legal right to restrict ingress and egress of the public thoroughfare that the Town of Haughton is maintaining. In other words, the subdivision cannot have both things: free maintenance, but restricted public access.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL
By:_______________
JACKSON D. LOGAN, III
Assistant Attorney General
JDC/JDLIII/ard